In re William Lyle PHILLIPS, Debtor.

William ROEMELMEYER,
Trustee, Plaintiff,

v.

William Lyle PHILLIPS, and Jean P.
Phillips, Defendants.

Bankruptcy No. 87–02845–BKC–SMW.
Adv. No. 89–0323–BKC–SMW–A.

United States Bankruptcy Court,
S.D. Florida.

Sept. 14, 1989.

**500**

Steven Friedman, Miami, Fla. for William Roemelmeyer, trustee.

Kenneth S. Rappaport, Boca Raton, Fla., for William Lyle Phillips and Jean P. Phillips.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on for trial before this Court on August 15, 1989 upon the Complaint to Set Aside Fraudulent Transfers, for Declaratory Relief to Determine Estate's Interest in Proceeds Derived from Sale of Real Property, and to Impose Equitable Lien against Proceeds Derived from Sale of Real Property, filed by William Roemelmeyer, Trustee, Plaintiff ("trustee") against William Lyle Phillips, the Debtor herein ("debtor") and Jean P. Phillips, his wife ("wife"), pursuant to 11 U.S.C. § 544(b), Fla.Stat. § 726.01, and Bankruptcy Rules 7001(1) and (7). The Court, having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law:

Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 157(b) and § 1334(b) and the district court's general order of reference. This is a core proceeding in which the Court is authorized to hear and determine all matters relating to this case in accordance with 28 U.S.C. § 157(b)(2)(H).

This bankruptcy case was commenced on July 14, 1987 with the debtor's filing of his voluntary chapter 7 petition. Prior to the debtor's bankruptcy filing, he owned an undivided one-half interest in two separate parcels of real property, consisting of (1) a sixteen unit apartment building at 1223 N.E. First Avenue, in Homestead, Florida, and (2) a commercial building located at 1175 East 4th Avenue, in Hialeah, Florida. The debtor co-owned these properties with his wife, the owner and holder of the remaining undivided one-half interest in the properties, until October 1, 1985, on which date the debtor conveyed fee title to both properties in favor of his wife. The trustee, in his Complaint, seeks to set aside the debtor's conveyances, and to impose an equitable lien against proceeds held by the wife which have been derived from the subsequent sales of the properties. The debtor and his wife, in their Answer, acknowledge the conveyances, but deny that the transactions were intended to defraud creditors of the debtor. The debtor and his wife also assert that, prior to the October 1, 1985 conveyances, both properties were owned by debtor and wife as tenants by the entireties and that there can be no fraudulent transfer of entireties property.

The trustee seeks to set aside the referenced transfers under Fla.Stat. § 726.01, which renders void any transfer made with actual intent to hinder, delay, or defraud creditors as to a creditor existing at the time of the conveyance. The trustee thus seeks to exercise his "strong-arm" powers as a perfected judicial lien creditor as of the petition date. To exercise such powers, the trustee must prove that there existed, as of the date of the challenged transactions, at least one creditor of the debtor who in fact could have challenged the transactions on its own. *Heffron v. Duggins*, 115 F.2d 519 (9th Cir.1940); *Menick v. Carson*, 96 F.Supp. 817 (S.D.Cal.1951). The trustee clearly has met his burden on this point by establishing that, as of October 1, 1985, the debtor owed Gold Coast Insurance Agency, Inc. ("creditor") the sum of at least $250,000, pursuant to an agreement executed on February 17, 1984

("agreement") between creditor and debtor. The fact that the creditor's claim was not liquidated as of October 1, 1985 does not preclude the trustee from invoking his strong-arm powers. *Matter of Baumgartner*, 55 F.2d 1041 (7th Cir.1931). The creditor ultimately did file a proof of claim for $273,021.32, but so long as the creditor's claim was pending as of the date of the challenged transfers, the trustee may assert the instant cause under § 544.

The debtor explained that his conveyance of his interests in the apartment complex and the commercial building was motivated by his then-existing marital difficulties, and as part of the property settlement arrangement with his wife. However, further consideration of the trial testimony given by the debtor and his wife undermines the purported propriety of the conveyances. Both the debtor and his wife conceded that neither had consulted with an attorney prior to the conveyances, and further, that there had been no discussion between the debtor and his wife concerning a property settlement agreement prior to the debtor's October 1, 1985 conveyances. In fact, the debtor's wife did not know of the conveyance until many months after the transfers occurred. The testimony of the debtor and wife is further discredited by the debtor's prior testimony given during the course of a Bankruptcy Rule 2004 examination conducted by his creditors. As an additional basis for the property transfers, the debtor recited his then-existing concern, as an insurance agent, as to his errors and omissions liability stemming from his sale of insurance policies. The Court finds the dual rationale proffered by the debtor to explain the transfers to his wife to be totally inconsistent. If the debtor in fact was in the midst of a divorce, and at the same time was concerned about insulating his assets against potential claimants, logic dictates that he would not have conveyed property to his soon-to-be ex-wife, in order to protect his assets against potential claims.

Rather, the record established in this adversary proceeding strongly supports the trustee's allegations that the debtor's transfers to his wife were effected to defraud his creditors. The debtor acknowledged that he was in financial straits in early 1985, approximately six months prior to the transfers at issue, during a luncheon meeting with the creditor's principal. At the meeting, the debtor explained his financial predicament, and stated that he was considering the filing of personal bankruptcy. The creditor's principal remarked to the debtor that "You will lose all of your property if you file bankruptcy", to which the debtor responded: "We will see about that".

The debtor's fraudulent intent in making the real property conveyances to his wife is corroborated by the course of events, with regard to the debt due the creditor, which transpired subsequent to the debtor's aforementioned luncheon meeting. Pursuant to the agreement, formal demand was made upon the debtor by the creditor on July 18, 1985 for payment of the $250,000 due the creditor by the debtor. Subsequently, the dispute was submitted to arbitration, in accordance with the agreement. On January 15, 1986, the arbitration committee found the debtor and his agency to be indebted to the creditor in the amount of $250,000. On January 16, 1986, the day after the issuance of the arbitration decision, the deeds which had been executed by the debtor in favor of his wife on October 1, 1985, were recorded in the public records for Dade County, Florida. The debtor professed to be without knowledge to explain either the recording of the deeds one day after the issuance of the arbitration's decision, or the notarization of the deeds on December 10, 1985, over two months *after* execution of the deeds, yet more than one month *prior* to their recording. Based upon the debtor's failure to explain the delay in the notarization and recording of the deeds, and based upon the contemporaneous pendency of the claim of the creditor, this Court finds that the recording of the deeds from the debtor to his wife was intentionally postponed and withheld pending the outcome of the arbitration proceeding. Quite obviously, upon the issuance of the adverse arbitration ruling, the deeds to the debtor's wife were *then* recorded in an

effort to place the debtor's interest in the real property beyond the reach of his creditors. This action was undertaken by the debtor in a deliberate attempt to hinder, delay, and defraud his creditors.

The debtor and his wife have argued that, even if the debtor did intend to circumvent his creditors' claims by way of his real property conveyances, the debtor's interest in the properties was exempt as an interest in a tenancy by the entireties co-owned with his non-debtor spouse, and thus, beyond the reach of the debtor's creditors. Since this is an action to determine the propriety of real property transfers, state law must be applied in determining whether the debtor's interest in the subject properties indeed was and is exempt from claims of his creditors. *Beall v. Pinckney*, 150 F.2d 467 (5th Cir.1945). Although the debtor and his wife did jointly own the real property in controversy prior to the conveyances at issue, no evidence was submitted as to the intention of the debtor and his wife to own the properties as tenants by the entireties. However, the intention of the debtor and his wife as to the manner in which they held joint title is not relevant *sub judice*, as on October 1, 1985, any existing tenancy by the entireties between debtor and wife terminated with his conveyances to her. Under Florida law, a deed executed by a husband to his wife conveying an undivided one-half interest in property previously owned by them as tenants by the entireties terminates that estate, and thus, vests a fee simple interest in the properties to the wife. *Hunt v. Covington*, 145 Fla. 706, 200 So. 76 (1941); *Jonas v. Logan*, 478 So.2d 410 (Fla. 3rd DCA 1985); *State Dept. of Commerce v. Lowery*, 333 So.2d 495 (Fla. 1st DCA 1976). This Court must consider the exemption statutes in existence as of the petition date, i.e. July 14, 1987, in determining the availability of exemptions as to the debtor's property. *In re Currie*, 34 B.R. 745 (D.Kan.1983); *In re Patterson*, 64 B.R. 120 (W.D.Wis.1986); *In re Van Hove*, 78 B.R. 917 (N.D.Iowa 1987); *In re Fill*, 84 B.R. 332 (Bkrtcy.S.D.N.Y.1988). Since the debtor did not hold legal title to the properties at issue on July 14, 1987, no tenancy by the entireties could have existed as to the properties at issue. *First National Bank of Leesburg v. Hector Supply Co.*, 254 So.2d 777, 781 (1971). Consequently, after October 1, 1987, the debtor's undivided one-half interest in the properties at issue was held by his wife for his benefit in a constructive trust. Florida law defines a trustee of a constructive trust as follows:

One who acquires property by fraud, misrepresentation, or other circumstance, rendering it inequitable for him to retain it, is in equity regarded as a trustee for the party who suffers by reason of the fraud or other wrong and who is equitably entitled to the property.

*Bell v. Smith*, 159 Fla. 817, 32 So.2d 829 (1947).

The trustee, as the successor-in-interest to the rights of the debtor, is entitled to a one-half interest of in the proceeds presently held by the wife derived from her sale of the afore-described real property. The closing statements introduced into evidence by the trustee substantiate the receipt by wife of $158,592.42 in net proceeds derived from the sale of the apartment complex located at 1223 N.E. First Avenue, Homestead, Florida and $62,539.30 in net proceeds derived from the sale of the office building located at 1175 East 4th Avenue, Hialeah, Florida. Thus, the trustee is entitled to one-half of the proceeds derived from the referenced sales, equal to $110,565.86. In order to secure payment of the trustee's interest in the afore-mentioned net proceeds, this Court imposes an equitable lien in favor of trustee against the funds presently held by wife generated from the sale of the above-described properties, to the extent of $110,565.86.

A separate Final Judgment will be entered in accordance with these Findings of Fact and Conclusions of Law. Costs shall be awarded upon motion.