**In re Joseph Frederick BLITSTEIN, Debtor.**

**Gui L.P. GOVAERT, Trustee, Plaintiff,**

**v.**

**B.R.E. HOLDING COMPANY, INC., Defendant.**

**Bankruptcy No. 88–00820–BKC–SMW. Adv. No. 89–0236–BKC–SMW–A.**

United States Bankruptcy Court, S.D. Florida.

Sept. 19, 1989.

**134**

Chad P. Pugatch, Ft. Lauderdale, Fla., for plaintiff.

Marte V. Singerman, Miami, Fla., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on for trial on August 15, 1989 upon the Amended Complaint To Recover Assets Of The Estate filed by the Plaintiff, GUI L.P. GOVAERT, TRUSTEE (hereinafter referred to as "TRUSTEE") against the Defendant, B.R.E. HOLDING COMPANY, INC. (hereinafter referred to as "B.R.E.") and the Court having heard the testimony and examined the evidence presented; observed the candor and demeanor of the witnesses; considered the arguments of counsel and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

The Amended Complaint alleges the fraudulent conveyance of a fifty (50%) percent interest in a commercial office building located at 285 Sevilla in Coral Gables, Florida legally described as follows:

> Lot 45, Block 15, CORAL GABLES CRAFTS SECTION, according to the Plat thereof, recorded in Plat Book 10,

Page 40, of the Public Records of Dade County, Florida.

The Complaint is brought pursuant to Florida Statutes Chapter 726 (the Florida Fraudulent Conveyance Statute prior to the 1988 Amendments) which is available to the Trustee pursuant to 11 *U.S.C.* § 544(b). At trial, the Court permitted the amendment of the pleadings to conform to the evidence attacking not only the immediate transfer of the property by the Debtor to Defendant, B.R.E. but as well, the underlying conveyance of the property by the Debtor to the Debtor and his former wife as then tenants by the entireties.

Based upon the evidence at trial. the Court finds that the Plaintiff/Trustee established the fraudulent conveyance of the office building property by the Debtor, JOSEPH FREDERICK BLITSTEIN, in order to avoid indebtedness owed to his then existing creditors, including Intervisa Corporation, the major creditor of this Estate.

The Debtor obtained an undivided one-half interest in the subject property in 1981. In February, 1984, he transferred the property without apparent consideration to himself and his wife, the purpose of which was impliedly to create a tenancy by the entireties. However, this transfer was made shortly after Intervisa Corp. (hereinafter "Intervisa") the major creditor of this Estate, and at that time a creditor of the Debtor as well as a limited partner of the Bonefish Yacht Club Limited Partnership began threatening litigation against the Debtor as a result of his misconduct as general partner. This litigation ultimately was filed in 1986 resulting in a Final Judgment for approximately $760,000.00 plus interest which has been upheld in State Court appeal and which this Court has previously determined to be non-dischargeable in bankruptcy.

In March of 1986, after an accounting had revealed serious financial irregularities, heightening the prospect of litigation, the Debtor and his wife transferred their fifty (50%) percent interest in the subject property to the Defendant in this action, B.R.E. HOLDING COMPANY, INC. This transfer was clearly without real considera-

tion and the transferee, B.R.E., was a corporation owned by the Debtor's brother and sister-in-law.

The statute under which we are operating in this action, Florida Statute § 726.01, which was the statute applicable at the time of this transaction, provided in applicable part as follows:

"every feoffment, gift, grant, alienation, bargain, sale, conveyance, transfer and assignment of lands, tenements, hereditaments, and of goods and chattels, or any of them ... which shall at any time hereafter be had, made or executed, contrived or devised of fraud, covin, collusion or guile, to the end, purpose or intent to delay, hinder or defraud creditors or others of their just and lawful actions, suits, debts, accounts, damages, demands, penalties or forfeitures, shall be from hence forth as against the person or persons, or bodies politic or corporate, his, her or their successors, executors, administrators and assigns, and every one of them so intended to be delayed, hindered or defrauded, deemed, held, adjudged and taken to be utterly void, frustrate and of none effect ..."

This Court has previously upheld the applicability of this Statute in Bankruptcy and its availability to a Trustee or Debtor–In–Possession to avoid a transfer without consideration to an insider corporation. *In re A.M. Operating Corporation*, 32 B.R. 38 (B.C.S.D. Fla.1983). It is clear from the evidence presented that the classic "Badges of Fraud" are present in this case and that the transfer of the Debtor's fifty (50%) percent interest to B.R.E. should be set aside.

■ First of all, the Defendant's contention that this property was entireties property at the time of the transfer and thus not susceptible of fraudulent conveyance must fail. A review of the title chain as presented at trial shows that the property was originally held in the name of the Debtor only. In 1984, after substantial disputes and at a time when creditors of this Estate were in existence and actively pursuing the Debtor, he transferred the property to entireties status without consideration. The entireties character of this property was thus an intervening step in the process and, as stated at trial in the request to conform the pleadings to the evidence, the Court must therefore look back to the original transaction in February of 1984. While the Court recognizes the case of *Sneed v. Davis*, 135 Fla. 271, 184 So. 865 (1939) stating that transfers from the entireties cannot be attacked as fraudulent if they were previously exempt, by looking back to the inception of the transaction in 1984 it can be seen that the transfer to entireties status was in itself fraudulent. It has also long been held that the transfer of property by a debtor, through a conduit to the debtor and his wife, to create an estate by the entireties in order to place property beyond the reach of creditors constitutes a fraud on the creditors in and of itself creating a continuing and resulting trust and allowing the avoidance of that conveyance. *Sample v. Natalby*, 120 Fla. 161, 162 So. 493 (1935).

■ The evidence at trial showed there was no real consideration paid by the Debtor's brother, Peter, or his corporation, for the transfer of the Debtor's interest in the building. The testimony of Michael Zier, C.P.A., a former agent of the Internal Revenue Service, who was retained by the Trustee with permission of the Court, established that no cash was paid for the transfer. Although an assignment of stock in B.R.E. from the Debtor to his brother recited that the brother would provide future services as an architect on the so called Caesarea project in Israel, no significant documentation of such services was provided to Zier in discovery or to the Court at trial. The drawings produced at trial as well as the brother's testimony, provide no insight as to the value of the services. Further suspect is the point that the Debtor did not show the transfer of the real property on his tax return nor did the brother reflect the transfer of the property in exchange for services as income on his tax return. The accountant's testimony indicates that these disclosures would have to have been reported to the Internal Revenue Service.

The brother further testified that he did not know how much he was to be paid for his services or whether he was even performing the services for the Debtor or for the Caesarea project or other investment group. Although he testified that he went to Israel with his drawings to consult with Israeli persons involved with the project, he did not provide any specific data concerning the amount of time that he spent on the project. He admitted that in fact that he paid no cash for B.R.E.'s interest in the subject property, other than closing costs and that the Debtor continued to use the property as his office after the transfer.

Although the Debtor's brother attempted to suggest that he had assumed a liability on the property to South Florida Savings Bank, in reality, the bank did not consider the transaction sufficiently substantive to take the Debtor off of his obligation. Moreover, even the Defendant's attorney, Richard Krinzman, admitted that the assumption was "informal".

The assignment of stock in B.R.E. from the Debtor to his brother, which the Court views as a self-serving document, also recited as consideration the fact that the brother, Peter Blitstein, was to improve the building. However, there was no documentation that the Debtor ever had the original obligation to make any improvements and the Trustee's accountant, Mr. Zier, was unable to document this. It is thus clear that the improvements were not for the benefit of the Debtor, but were for the benefit of Peter Blitstein who was to occupy approximately half the building as a tenant. Tenant improvements may or may not be the responsibility of the landlord but are very often the responsibility of the tenant. It was the very parties involved in this fraudulent conveyance who determined that the responsibility would be that of the landlord since it was Peter Blitstein who controlled the leasing process and the value to be attributed to rent and other items. Clearly, from the testimony of the Defendant's own witnesses, the renovation of the building was undertaken by Peter Blitstein as a tenant improvement so that the offices could reflect the particularly high quality of architecture which was suitable to his needs. It is also clear that the work was done at a tremendously higher expense than was necessary for ordinary office purposes. Much of the work was done for free by a contractor who knew him and the rest was poorly documented at trial. Although checks totalling under $25,000.00 were produced, no invoices were produced showing that the money was spent on the renovations or what renovations were completed. And, at least half of the responsibility for making renovations was originally the responsibility of Peter Blitstein or B.R.E. since the other half of the building was owned by him. Only a fifty (50%) percent interest of the building is at stake in this trial.

The evidence at trial showed that the Debtor had never really lost his interest in the subject property. Although he ostensibly transferred the property to B.R.E. and his stock in B.R.E. to his brother and sister-in-law, he continued to rely upon it as an asset to support a financial application to the Centrust Bank for a loan, a transaction which did not close until June of 1986. Further, Zier testified that after the purported transfer, B.R.E. appeared to pay its real estate taxes on the subject property from funds supplied by the Debtor.

This property was valued at $400,000.00 at or about the time of the conveyance, subject to only $305,000.00 in mortgages. This results in a consideration for a fifty (50%) percent interest in the building of at least $47,500.00. No real consideration was proven by the Defendant to support this amount.

Again, this transfer without consideration, to a family member, and under circumstances involving the retention of possession of a portion of the premises at least by the Debtor are all "Badges of Fraud", raising a presumption of fraudulent intent. *In re: A.M. Operating Corporation,* supra. *Scott v. Dansby,* 334 So.2d 331 (1st DCA Fla.1976). *Gyorok v. Davis,* 183 So.2d 701 (3rd DCA Fla.1966). *Charles Ringling Company v. Muirheid,* 101 Fla. 1215, 133 So. 108 (1931). *Neal v. Gregory,* 19 Fla. 356 (1882).

The presumptions raised by these "Badges of Fraud" were in no way effectively rebutted by the Defendant at trial. In fact, the Debtor's brother, Peter Blitstein, testified that the entire reason for the conveyance to him was based upon his knowledge of his brother's financial problems.

Based upon the foregoing, neither did the Defendant in any way prove its status as a "good faith transferee" under the standards set forth in 11 *U.S.C.* § 550. Absent proof of this standard there is no entitlement to a set-off for the alleged improvements made to the property. The issue of good faith under Section 550 must be determined on a case by case basis and involves the question of whether the grantee knew or should have known that he was not trading normally but that on the contrary, the purpose of the trade, so far as the *debtor* was concerned was the effective fraud on the debtor's creditors. This standard may also be judged on the basis of applicable State law. *In re: Coleman,* 21 B.R. 832 (B.C.S.D. Texas 1982). *Matter of Bristol Industries Corporation,* 45 B.R. 606 (B.C.D.Conn.1985). Evidence of improvements to real property by the transferee does not create entitlement to a lien unless this good faith is shown. *In re: Matter of Jones,* 68 B.R. 483 (B.C.W.D. Mo.1984).

The burden of showing good faith is upon the transferee. *In re: Morris Communications NC Inc.,* 75 B.R. 619 (B.C. W.D. NC 1987). In no way did Peter Blitstein or B.R.E. meet this burden of proof. Again, Peter Blitstein clearly knew of his brother's financial problems; was well aware of the dispute with Intervisa; and took the property in order to try and extricate it from his brother's creditor problems. Further, based upon the standard set forth above, the fraudulent intent can be presumed by virtue of the presence of the various "Badges of Fraud" rendering the transaction avoidable.

The bona fide purchaser for good faith, creating entitlement to a lien for improvements, is meant to be reserved for situations involving an arms length transfer to an outside third party. Not to the Debtor's brother under these circumstances.

Finally, it is clear that should B.R.E. retain this property, the Trustee is entitled to at least a money judgment in the amount of the *greater* of the value at the time of the transfer; or the value at the time of recovery less the value of improvements made. While these improvements were never clearly documented at trial, the value of the fifty (50%) percent interest at the time of transfer was at least $47,500.00 creating a minimum standard as to which the Trustee is entitled. *In re: Southeast Community Media, Inc.,* 27 B.R. 834 (B.C. E.D. Tenn.1983); *In re: Ralph A. Veon,* 17 B.R. 590 (B.C.W.D. PA 1982).

Based on the foregoing, the Plaintiff/Trustee is entitled to a Final Judgment avoiding the transfer of the subject real property and restoring to the Trustee his fifty (50%) percent interest therein or in the alternative, a money judgment in his favor in the amount of $47,500.00. The Court will enter a separate Final Judgment consistent with these Findings and Conclusions.