### In re Ralph MIZRAHI a/k/a Ralph Mizrahi, C.P.A., Debtor.

Gordon L. KIESTER, Trustee, Plaintiff,

v.

Ralph MIZRAHI, a/k/a Ralph Mizrahi, C.P.A., Defendant.

Gordon L. KIESTER, Trustee, Plaintiff,

v.

Ralph MIZRAHI and Ruth Ann Mizrahi, as Co–Trustees of the Mizrahi Family Trust, Sheryl Beth Mizrahi, and Rochelle S. Mizrahi Winograd, Defendants.

Bankruptcy No. 91–13132–8P7.
Adv. Nos. 92–211, 92–212.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 10, 1995.

John Anthony, Tampa, FL, for plaintiff.

Gordon Kiester, Trustee, Tampa, FL.

Guillermo Ruiz, Ralph Mizrahi, St. Petersburg, FL, for debtor/defendant.

Marsha Griffin Rydberg, Tampa, FL, for defendants Ruth Ann Mizrahi, Sheryl Mizrahi and Rochelle Mizrahi Winograd.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is four claims asserted by Gordon L. Kiester (Trustee) against Ralph Mizrahi (Debtor); Ruth Ann Mizrahi, his wife, a non-debtor, sued as co-trustee; the Mizrahi Family Trust; and Sheryl Beth Mizrahi and Rochelle S. Mizrahi Winograd, the daughters of the Debtor and beneficiaries of the Trust.

The Trustee in Count I seeks a turnover to the estate of certain personal properties set forth in Paragraph 15 of the Complaint pursuant to § 542. Count II purports to state a claim based on § 544(b) of the Bankruptcy Code and Fla.Stat. §§ 726.01 and 726.105(1)(b), alleging a fraudulent transfer of certain properties to one of the named defendants, the Mizrahi Family Trust (Mizrahi Trust). Although Count II makes no reference to any other statutory provision, it also appears that the factual allegations in Paragraphs 21 and 24 of Count II state a claim based on Fla.Stat. § 726.106(1). The failure in a complaint to cite a statute, or to cite the correct statute, does not affect the merits of a claim if the factual allegations are sufficient. *Albert v. Carovano,* 851 F.2d 561, 571 n. 3 (2d Cir.1988).

The claim in Count III is based on the same Code provision and is coupled with Fla.Stat. §§ 726.01, 726.105(1)(b) and 726.07. Again, it appears that the specific allegations in Paragraphs 30, 31, and 34 also state claims based on Fla.Stat. §§ 726.105(1)(a) and 726.106(1). This transfer involves real property referred to as Sea Fox Cottage. The last count is misnumbered as Count III but it is, in fact, Count IV. Here the Trustee seeks a determination by this Court that the corporate veil of Mizrahi Properties, Inc. be pierced and all its properties should be declared to be properties of the Debtor and, in turn, property of the estate.

At the conclusion of the presentation by the Trustee, this Court dismissed the claim based on turnover. Further, because there was no evidence of insolvency, this Court also dismissed the constructive fraud claim based on Fla.Stat. § 726.106(1). This left for consideration the claim in Count III based on Fla.Stat. § 725.105(1)(a) alleging the actual intent of the Debtor to defraud; the claims in Counts II and III based on Fla.Stat. § 726.105(1)(b) alleging transfers without consideration where the debtor intended to incur, or reasonably should have believed that he would incur, debts beyond his ability to repay; and the alter ego or veil piercing

claim set forth in Count III, renumbered as Count IV.

Subsequent to the final evidentiary hearing, the Trustee moved to amend the Complaint to conform to evidence and testimony. Specifically, the Trustee sought to amend Count II to include an allegation of actual fraud by transferring with the actual intent to hinder, delay or defraud a creditor under Fla.Stat. § 726.105(1)(a). Pursuant to Bankruptcy Rule 7015, Rule 15 of the Federal Rules of Civil Procedure applies in adversary proceedings. Rule 15(b) provides that when issues are tried by the implied consent of the parties, they shall be treated as if they had been raised in the pleadings.

The evidence presented at the hearing was directed at establishing the "badges of fraud" enumerated in Fla.Stat. § 726.105(2). At no point was a distinction made that this evidence only applied to the transfer of the beach cottage and not to the transfer of the entireties property transferred into the Trust. The Defendants failed to raise any objection at the hearing as to the relevance of this evidence to the Count II properties. In fact, the omission of the words "with actual intent to defraud" from Count II of the Second Amended Complaint was only noted by the Defendants in their Response and Objection to Plaintiff's Motion to Amend. Because the evidence had already been presented without objection, leave is hereby granted to amend the pleadings to conform to the evidence presented.

The facts as established at the final evidentiary hearing which are relevant to the remaining issues may be summarized as follows:

Ralph Mizrahi, the Debtor, is a certified public accountant who maintains his offices on Central Avenue in St. Petersburg, Florida. The Debtor is married to Ruth Ann Mizrahi. The other two defendants, Sheryl Beth Mizrahi and Rochelle S. Mizrahi Winograd, are their daughters. In December, 1985, the Debtor and his wife created an irrevocable trust. (Plaintiff's Exhibit No. 1). Pursuant to the terms of the Trust Agreement, the Debtor and his wife were the settlors and co-trustees of the Trust, and the corpus of the Trust is described on a Schedule annexed to the Trust Agreement. Although the Trust Agreement placed in evidence does not include the Schedule, the Debtor testified that the *res* of the trust consisted of some small privately held stocks. Paragraph 2 of the Trust Agreement, the paragraph dealing with the trustees' powers, provides that the Debtor and Ruth Ann reserve the right, without consent of any person, to revoke or modify the Trust Agreement in whole or in part.

The Debtor, in addition to being a practicing certified public accountant, has been involved in numerous investments with other parties. Among them was an adult congregate living facility (ACLF) known as Pine Hill located in North Carolina, which was owned by a general partnership of which the Debtor was one of the general partners. The property was mortgaged to secure a principal indebtedness of $6,200,000, and the mortgage was held, initially, by First Union National Bank as trustee. The obligation was also guaranteed by the other general partners of the partnership.

The partnership defaulted on the mortgage loan, and First Union National Bank filed a suit against the partnership and against the general partners, including the Debtor. On February 1, 1989, the General Court of Justice, Superior Court Division in the State of North Carolina, entered a judgment against the guarantors, including the Debtor, in the amount of $6,846,077.57 plus interest at the statutory rate and attorneys' fees. On May 18, 1989, a date which plays a crucial role in the matters under consideration, the court entered a corrected judgment against the guarantors, including the Debtor, in the same amount of $6,846,077.57 with interest at the statutory rate and attorneys' fees fixed at 15% based on the principal debt.

On May 17, 1989, or after the entry of the original judgment, but the day before the entry of the final judgment, the Debtor and his wife executed an amendment to the Trust Agreement of the Mizrahi Trust. The Amendment changed the original Trust Agreement by providing in Article II, ¶2 that the Settlor (sic), (which although used in the singular, undoubtedly refers to the Debt-

or and his wife Ruth Ann) reserved the right to alter, amend, revoke the Trust, either in whole or in part, provided that the beneficiaries agree to any revocation. The same Paragraph also provides, however, that upon revocation of the Trust, the trust property shall be distributed 50% to the daughters, Sheryl Beth Mizrahi and Rochelle S. Mizrahi Winograd, and not to the Debtor or his wife.

Not only was the Trust Agreement amended on May 17, 1989, but it was also on this date that numerous properties were transferred to the Trust. The Debtor and his wife, Ruth Ann, transferred the following properties into the Trust: two residential properties located in Massachusetts; the Debtor's office building located in St. Petersburg; two Israeli bonds; the office equipment used by the Debtor in his office; a Mercedes Benz automobile and some securities. At the same time, Ruth Ann Mizrahi and her daughter, Sheryl Beth, transferred to the Trust a beach house called "Sea Fox Cottage," located in Indian Rocks Beach. This beach house, previously owned by the Debtor and his spouse as a tenancy by the entirety, had been deeded to Ruth Ann and Sheryl Beth Mizrahi on February 5, 1986. However, the deed was not recorded until December 27, 1988. It is without dispute that neither the original Trust created in 1985 nor the amendment dated May 17, 1989, indicates that the Debtor received any consideration for the transfer of the properties which composed the Trust corpus. Further, the Debtor testified that he received no consideration for transferring the beach house to his daughter.

On June 1, 1989, the Debtor renounced any right to receive any income from the Trust. There is no evidence that the Debtor did in fact receive any income from the Trust, although there are some checks in evidence indicating that the Trust in fact paid some of the personal expenses of the Debtor (Plaintiff's Exhibit No. 16). According to the Debtor, these payments were repayment of advances he made to the Trust. There is nothing in the record to substantiate by documentation that any advances were in fact made by the Debtor on behalf of the Trust. On April 1, 1991, the Debtor resigned as Trustee. (Plaintiff's Exhibit No. 5).

The Petition filed in this case evidences that at the time of filing the Debtor had real or contingent liabilities totaling $9,097,763.70, all of which were incurred by him prior to 1989. It also appears that in December, 1988, both the Debtor and his wife had joint liabilities to four different creditors and owned the following assets jointly: (1) their residence located in St. Petersburg; (2) the office building on Central Avenue in St. Petersburg, Florida; (3) two residences in Rockport, Massachusetts; (4) some traded securities; (5) two Israeli bonds and (6) a Mercedes Benz automobile.

Basically these are the facts established at the final evidentiary hearing which, according to the Plaintiff, warrants the granting of the relief it seeks on the remaining claims. Allowing for the amendment of Count II to conform with the evidence, these remaining claims are: (1) that at the time Debtor and his spouse transferred the properties described in Counts II and III into the Trust for no consideration, Debtor intended to incur, or reasonably should have believed he would incur, debts beyond his ability to repay; or alternatively, (2) that Debtor transferred his interest in these properties with the specific intent to hinder, delay or defraud creditors, particularly First Union who had obtained a judgment against the Debtor and others.

Section 544(b) of the Bankruptcy Code provides that "[t]he trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law for a creditor holding an unsecured claim . . ." Thus, in order to prevail under section 544(b), the Trustee must first establish that, at the time of the transfer, there was an existing creditor who was holding an unsecured claim. *In re Steele,* 79 B.R. 503, 504 (Bankr.M.D.Fla.1987).

Count II alleges that a fraudulent transfer occurred on May 17, 1989, when the properties were transferred into the Mizrahi Family Trust. Count III alleges that a fraudulent transfer occurred when the deed transferring the Debtor's ownership interest

to his daughter was recorded on December 7, 1988. Although the deed was dated February 5, 1986, Fla.Stat. § 726.107(1) provides that for the purposes of the Uniform Fraudulent Transfer Act, a transfer of real property is made when the transfer is perfected against a *bona fide* purchaser. Therefore, the date of transfer is determined by the date of recordation. According to the Debtor's own testimony, during this relevant time period he and his spouse had the following unsecured joint liabilities: a $100,000 joint unsecured debt to Southern National Bank incurred in 1987; a $150,000 joint unsecured debt to First Union incurred in 1988; and a $130,000 joint unsecured debt to Triple D. Further, Mrs. Shirley Insoft testified that she was an unsecured joint creditor of the Debtor and Mrs. Mizrahi in May, 1989. The existence of these unsecured joint creditors satisfies the threshold test for the application of section 544(b).

■ However, section 544(b) is not a voiding power by itself. It must be used in tandem with some other law. Section 544(b) merely allows the Trustee to borrow an unsecured creditor's voiding power which is derived from applicable state law. *In re Steele*, 79 B.R. at 504. Therefore, the second hurdle facing the Trustee is to prove that the alleged fraudulent transfers could have been avoided by one of these unsecured creditors under Florida's Uniform Fraudulent Transfer Act.

■ The Debtor contends that a transfer of property held by a husband and wife in tenancy by the entirety cannot be attacked as fraudulent when the property was previously exempt. This contention is based on the mistaken premise that an interest in entireties property is always exempt from the estate of one spouse individually filing bankruptcy. The property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). It therefore unquestionably follows that an interest in property owned by the Debtor as a tenancy by the entirety is property of the estate under section 541.

After property has been initially included in the estate under section 541, section 522 operates to exempt certain properties. Section 522 provides for two alternative sets of exemptions. Subsection 522(b)(1) allows the debtor the federal exemptions enumerated in subsection 522(d), unless state law denies this option. Subsection 522(b)(2) alternatively allows the debtor to choose the exemptions provided by his domicile state and the exemptions provided by federal non-bankruptcy law. This second set of exemptions also provides that the debtor may exempt:

> any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

11 U.S.C. § 522(b)(2)(B). Florida specifically rejected the federal exemptions of subsection 544(b)(1). Fla.Stat. § 222.20. Therefore, in Florida, a debtor's exemption rights to real property must be determined solely according to Article X, Section 4 of the Florida Constitution as implemented by Chapter 222 of the Florida Statutes.

As previously pointed out by this Court in *In re Amici*, 99 B.R. 100, 101 (Bankr. M.D.Fla.1989), there is no mention of any exemption for tenancy by the entireties property either in the Constitution of Florida or any state statute. Debtor's reliance on section 522(b)(2)(B) to exempt all entireties property from his individual bankruptcy estate is misplaced. By limiting the exemption to that property "exempt from process under applicable nonbankruptcy law," Section 522(b)(2)(B) clearly intended to limit the Debtor's exemption to those available under the local law of the Debtor's domicile. *In re Amici*, 99 B.R. at 101.

■ Under Florida law, tenancy by the entirety property is immune from the claim of a single creditor of one of the tenants. *Stanley v. Powers*, 123 Fla. 359, 166 So. 843, 846 (1936). In contrast, if a judgment is against both the husband and the wife, property held by a tenancy by the entirety may be sold on execution issued on the judgment. *Id.* This distinction under Florida common law does not disappear merely because one of the spouses has individually filed bankruptcy.

This same distinction continues under section 522(b)(2)(B). Entireties property is not immune from the claims of joint creditors of the husband and wife. Therefore, if there are joint creditors, an interest in non-homestead property held as a tenancy by the entirety is an asset properly included in the bankruptcy estate and subject to liquidation. *In re Amici*, 99 B.R. at 101; *Napotnik v. Equibank and Parkvale Sav. Ass'n*, 679 F.2d 316, 320 (3d Cir.1982).

However, at the time the Debtor filed his Petition, title to the property which is the subject of this adversary proceeding was no longer held as entireties property. Title had been transferred for no consideration to the Mizrahi Family Trust. Having determined that there were joint unsecured creditors at the time of the transfers who could have reached property held by entireties, this Court must next determine whether the transfers into the Trust were fraudulent transfers under Chapter 726 of the Florida Statutes.

On May 17, 1989, the day before the entry of the corrected judgment in North Carolina against the Debtor, the Debtor and his wife transferred into the Trust certain properties which had previously been held as entireties property. Although the fair market value of these properties at the time of the transfer was $886,000, the Rockport properties had a outstanding lien of $360,000. Therefore, the net value transferred was $526,000. No consideration was received. The Trustee has alleged in Count II that this transfer occurred when the Debtor intended to incur, or reasonably should have believed he would incur, debts beyond his ability to repay. Under Fla.Stat. § 726.105(1)(b), such a transfer constitutes a fraudulent transfer as to present and future creditors.

The original judgment in favor of First Union against the Debtor and others, jointly and severally, was entered in North Carolina on February 1, 1989. The Debtor testified that he learned of this judgment shortly after February 1, 1989. There is no dispute that, at the time the Debtor and his wife transferred the properties into the Trust, the Debtor was aware that he would be personally liable for the judgement of $6,846,077.57, an amount beyond Debtor's ability to repay. This Court is satisfied that the Debtor's intent in transferring the entireties property into the Trust was to put his interest in these properties out of the reach of joint creditors.

As previously explained, for purposes of the Uniform Fraudulent Transfer Act, the transfer of the beach cottage from entireties property to the wife and daughter occurred on December 7, 1988, the day the deed was recorded. This was during the pendency of the North Carolina proceeding brought by First Union to collect the debt for which the Debtor was personally liable. Therefore, there is little doubt that the Debtor reasonably should have believed. he would incur debts beyond his ability to repay. Again, the Debtor testified that he received no consideration. Pursuant to section 726.105(1)(b), the transfer of the beach cottage is voidable as a fraudulent transfer as to present and future creditors.

The fact that the wife and daughter subsequently transferred their interests in the beach cottage to the Family Trust does not affect the voidability of the original transfer. Section 726.109 allows a creditor to recover judgment for the value of the asset transferred from: (a) the first transferee of the asset; or (b) any subsequent transferee other than a good faith transferee who took for value. Because the wife and daughter received no consideration when the property was transferred into the Trust, there is no defense to the voidability of the fraudulent transfer.

Not only is this Court convinced that section 726.105(1)(b) mandates a finding that a fraudulent transfer occurred, but this Court also believes the same result is reached under section 726.105(1)(a). Section 726.105(2) lists eleven "badges of fraud" which are factor to consider in determining actual intent under 726.105(1)(a). These include whether:

(a) The transfer was or obligation was to an insider.

(b) The debtor retained possession or control of the property transferred after the transfer.

(c) The transfer or obligation was disclosed or concealed.

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(e) The transfer was of substantially all the debtor's assets.

(f) The debtor absconded.

(g) The debtor removed or concealed assets.

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred.

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Fla.Stat. § 726.105(2).

The evidence presented at the hearing indisputably establishes the presence of five of these factors. The transfers were made to insiders: in Count II to the Family Trust and in Count III to the daughter. The Debtor retained control of the properties by appointing himself Trustee. Although the May 17, 1989 Amendment to the Trust Agreement conditioned a revocation upon agreement by the beneficiaries, the Settlors retained the unrestricted right to alter or amend the Trust Agreement. The Debtor did not renounce his right to income from the Trust until June 1, 1989, and did not resign as Trustee until April 1, 1991.

Before these transfers were made, the Debtor had been sued by First Union for his personal obligation on the ACLF loan. The transfer of the beach cottage occurred shortly before the entry of the judgment in favor of First Union. The transfer of the properties in Count II occurred after the entry of the judgment, and only one day before entry of the Corrected Judgment. Finally, the Debtor received no consideration for either of these transfers.

Although the presence of one factor alone may be insufficient to establish a fraudulent transfer, the presence of a combination of several of these factors is sufficient ground to find a fraudulent transfer occurred. *In re Steele,* 79 B.R. at 505. There is no magic number for how many factors must be present. In *In re Steele,* the court held a fraudulent transfer occurred when five factors were present. *Id.* However, even the presence of only three factors has been sufficient to establish fraudulent intent. *United States v. Romano,* 757 F.Supp. 1331, 1335 (M.D.Fla. 1989). Given the facts and circumstances in this case, this Court is satisfied that the Debtor's primary purpose in transferring the entireties property into the Trust was to put his interest in these properties out of the reach of his joint creditors.

Subsequent to the final evidentiary hearing, the Trustee also moved for a voluntary dismissal of Count IV of the Second Amended Complaint. Pursuant to Bankruptcy Rule 7041 and Rule 41(a)(2) of Federal Rules of Civil Procedure, when all parties will not stipulate to a voluntary dismissal, an action can only be dismissed after service of an answer by order of the court. This Court believes that a voluntary dismissal is the most expedient method for dealing with Count IV. The dismissal shall be with prejudice. The Defendants may pursue an award of fees and costs by filing a motion with 15 days of the entry of the Final Judgment.