In Re Mitchell **DELSON**, Debtors.

**Patricia A. Dzikowski,
Trustee, Plaintiff,**

v.

**Mitchell Delson; Bonnie Delson; 3353 Restaurant Corp. d/b/a Pumpernik's, an inactive Florida Corporation; M & S Holding Corporation, an inactive Florida Corporation; Nicole Deutch; Investment By Planners, Inc., a Florida Corporation; Salomon Smith Barney, Inc., a New York Corporation; and Comerica Bank, a banking institution regulated by the Federal Reserve Board, Defendants.**

**Bankruptcy No. 99–30015–BKC–SHF.
Adversary No. 99–3305–BKC–SHF–A.**

United States Bankruptcy Court,
S.D. Florida,
West Palm Beach Division.

April 20, 2000.

Patrick Scott, Fort Lauderdale, FL, for Defendants.

Patricia Dzikowski, Attorney at Law, Fort Lauderdale, FL, trustee.

### ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT AND SCHEDULING FURTHER PRE-TRIAL CONFERENCE

STEVEN H. FRIEDMAN, Bankruptcy Judge.

THIS MATTER came on for hearing on March 23, 2000, on cross motions for summary judgment filed by Plaintiff and Defendants. The Plaintiff ("Trustee") alleges that she is entitled, as a matter of law, to a judgment (1) avoiding the Debtor's transfer to his wife of his interest in the proceeds from the sale of the couple's homestead, as a fraudulent transfer pursuant to 11 U.S.C. § 544(b), which makes applicable Fla.Stat. §§ 726.105(1)(a) and 726.109(2)(a); (2) avoiding any subsequent transfers of said funds to third parties pursuant to Fla.Stat. § 726.109(2)(b); and (3) ordering turnover of said funds from the Debtor's wife and from any subsequent transferee pursuant to 11 U.S.C. §§ 541 and 542. The Defendants allege that they are entitled, as a matter of law, to a judgment determining that the subject transfers are not avoidable and dismissing this adversary proceeding as to all Defendants. With respect to both motions for summary judgment, the Court **denies** same and makes the following findings.

The Debtor and his wife have been married for 32 years, and the Debtor alleges that they never had any common creditors except a home mortgagee. In the 1980's, the Debtor and his wife owned a Salomon Smith Barney ("SSB") investment account as tenants by the entirety. In 1989, they changed ownership of the SSB account to the wife's name alone, and the Debtor alleges that, from the date of the change of ownership, he had no control over the account. The Debtor incurred over $1,000,-000 in debt between 1990 and 1992. By 1996, his aggregate outstanding debt was in the neighborhood of $4,000,000. On September 5, 1996, the Debtor and his wife sold their homestead, which they owned as tenants by the entirety, for $554,202.37. The net amount of proceeds received from this sale is disputed, but it is undisputed that on September 5, 1996, the Debtor and his wife deposited the net proceeds directly into a Barnett Bank account owned solely by the wife. Thereafter, the Debtor's wife transferred the net proceeds into certain mutual fund investment accounts at Investment by Planners ("IBP"). The Debtor alleges that the IBP accounts were owned solely by his wife. The Trustee alleges that, following the transfer of the net proceeds into the IBP accounts, the Debtor's wife caused the partial transfer of the net proceeds to her SSB account.

In 1997, the Debtor's wife formed two corporations: (1) M & S Holding Corporation, to acquire the rights to use the name "Pumpernik's"; and (2) 3353 Restaurant Corporation, to lease a location and to operate a restaurant business under the "Pumpernik's" name. The Debtor's wife

was the sole shareholder, director, and officer of both corporations. Later in 1997, the Debtor's wife financed the purchase of Pumpernik's by obtaining a loan from Comerica Bank ("Comerica"), which she secured in part by pledging her IBP investment accounts. The Debtor worked at Pumpernik's for no compensation, spending three to ten hours per day assisting his wife in the daily operation of the restaurant. In 1998, the Debtor's wife refinanced the Comerica loan with Union Planters Bank, which entity was substituted for Comerica as the pledgee of her IBP accounts. In June 1999, both M & S Holding Corporation and 3353 Restaurant Corporation were involuntarily dissolved. Subsequently, Union Planters Bank exercised its rights under its pledge agreement and drew full payment of its claim from the IBP accounts. Also in June 1999, the Debtor's wife transferred the $18,501.25 remaining in the SSB account to herself and the Debtor as tenants by the entirety. The Debtor's wife also transferred to her two daughters the $59,358.82 that remained in the IBP accounts after payment of the claim of Union Planters Bank.

On September 5, 1996, the Debtor and his wife knew or should have known that the Debtor owed roughly $4,000,000 in debts and that the Debtor was insolvent. Furthermore, the Debtor's wife did not give value in exchange for the Debtor's interest in the proceeds from the sale of their home. Accordingly, the Trustee argues that the transfer is subject to attack pursuant to 11 U.S.C. § 544(b), which renders applicable Fla. Stat. §§ 726.105(1)(a) and 726.109(2)(a). Conversely, the Debtor argues that the transfer is not subject to attack under these statutes since the Florida Uniform Fraudulent Transfers Act, of which Sections 726.105 and 726.109 are a part, specifically provides that it may not be used to avoid the transfer of "property to the extent it is generally exempt under nonbankruptcy law" or "an interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant." Fla.Stat. § 726.102(2)(b,c) (defining "asset," as used, in turn, in the definition of "transfer" in Fla.Stat. § 726.102(12)).

■ The Debtor argues that the property he transferred to his wife was generally exempt under nonbankruptcy law because it constituted proceeds from the sale of homestead which the couple intended to reinvest in another homestead. The Debtor cites numerous cases in support of the proposition that such a transfer cannot be avoided pursuant to the fraudulent transfer provision of the Bankruptcy Code. *See Malone v. Short*, 188 B.R. 857, 860 (Bankr. M.D.Fla.1995) (holding transfer of interest in homestead to non-debtor spouse was not avoidable pursuant to Section 548); *Kapila v. Fornabaio*, 187 B.R. 780, 782 (Bankr. S.D.Fla.1995) (holding Chapter 7 trustee could not avoid transfer pursuant to Section 548 where debtor executed Quit Claim Deed to his homestead property in favor of his non-debtor wife); *Gennet v. Docktor*, 185 B.R. 378, 386 (Bankr.S.D.Fla.1995) (holding transfer of debtor's undivided one-half interest in condominium unit to joint tenant was not avoidable pursuant to Section 548); *Tavormina v. Robinett*, 47 B.R. 591, 593 (Bankr.S.D.Fla.1985) (holding conveyance of condominium by debtor-wife to both debtors as tenants by the entireties was not avoidable pursuant to Section 548).

■ The foregoing cases are all distinguishable from the instant case, however, because they involve transfers of interests in homestead, as opposed to a transfer of an interest in the **proceeds** of homestead. If the Debtor in the instant case had transferred his interest in the homestead to his wife prior to the sale, such transfer would not have been avoidable because an interest in homestead is "generally exempt under nonbankruptcy law." Fla.Stat. § 726.102(2). Nevertheless, an interest in the proceeds of homestead generally is not exempt under nonbankruptcy law. As discussed at length in this Court's recent opinion in *In re Simms*, 243 B.R. 156, 158–59 (Bankr.S.D.Fla.2000), the proceeds

from a voluntary sale of homestead retain homestead exemption status only if the debtor proves by a preponderance of the evidence " 'an abiding good faith intention prior to and at the time of the sale of the homestead to reinvest the proceeds thereof in another homestead within a reasonable time.' " *Id.* at 158 (quoting *Orange Brevard Plumbing & Heating v. La Croix*, 137 So.2d 201, 206 (Fla.1962)).

Based on the stipulated facts of the instant case, the Court finds that the proceeds of the September 5, 1996 homestead sale, as a matter of law, did not retain homestead exemption status. The proceeds were admittedly used by the Debtor's wife to purchase collateral for a business loan; and, nearly four years after the homestead sale, neither the Debtor nor his wife has purchased a new homestead. This subsequent action and inaction belies any purported intent at the time of the sale to reinvest in another homestead within a reasonable time. Accordingly, the homestead exemption expired contemporaneously with the closing of the September 5, 1996 sale and prior to the Debtor's transfer of his interest in the proceeds to his wife.

■■■ The Debtor's next argument is that the subject transfer is not avoidable under the Florida Uniform Fraudulent Transfer Act because it constituted the transfer of "an interest in property held in tenancy by the entireties" which was "not subject to process by a creditor holding a claim against only one tenant." Fla.Stat. § 726.102. In *Roemelmeyer v. Phillips*, 104 B.R. 499, 502 (Bankr.S.D.Fla.1989) (Weaver, J.), the court held that the debtor's prepetition transfer of entireties property to his wife was avoidable pursuant to Florida's then-existing fraudulent transfer statute, Fla.Stat. § 726.01 (repealed 1987). The court reasoned that the transfer terminated the entireties estate, thereby subjecting the transfer to attack. *See id.* However, Fla.Stat. 726.01 did not contain the above-quoted language of the Florida Uniform Fraudulent Transfer Act, which directly abrogates the holding in *Phillips*.

Indeed, less than one week after his decision in *Phillips,* Judge Weaver entered his opinion in *Govaert v. B.R.E. Holding Co., Inc.,* 105 B.R. 133, 135 (Bankr.S.D.Fla. 1989), wherein the court addressed a similar issue under the newly adopted Uniform Act, Fla.Stat. § 726.101 et seq. The *B.R.E. Holding* court expressly recognized the case of *Sneed v. Davis,* 135 Fla. 271, 184 So. 865, 868 (1938) (holding transfer of exempt property is not avoidable, even if the transfer is made with the purpose of hindering, delaying, or defrauding creditors). *See B.R.E. Holding,* 105 B.R. at 135. However, the court held the transfer of entireties property was avoidable because the original transfer **into** entireties status had been fraudulent. *See id.* The inference to be drawn from *B.R.E. Holding,* given the court's recognition of *Sneed,* is that where the original transfer into entireties status is **not** fraudulent, a subsequent transfer of exempt entireties property is **not** avoidable. Such an inference is consistent with the language of the Florida Uniform Fraudulent Transfer Act.

■■■ The Court is unaware of any allegation in the instant adversary proceeding that the homestead was fraudulently transferred **into** the tenancy by the entireties. However, the subject transfer from the Debtor to his wife may still be avoidable if, at the time of the transfer, there were joint creditors who could have reached the entireties property. *See Kiester v. Mizrahi,* 179 B.R. 322, 327 (Bankr.M.D.Fla. 1995); *see also In re Willoughby,* 212 B.R. 1011, 1016 (Bankr.M.D.Fla.1997); *Enterprise Fin. Corp. v. Winn,* 185 B.R. 914, 918 (Bankr.S.D.Fla.1995); *In re Kimmel,* 131 B.R. 223, 228 (Bankr.S.D.Fla.1991). The Court finds that there are questions of fact on this issue which must be resolved at trial. Accordingly, it is hereby

ORDERED that the Delson Defendants' Motion for Summary Judgment is denied; and it is further

ORDERED that the Plaintiff, Patricia Dzikowski, Trustee's Cross Motion for

Partial Summary Judgment is denied; and it is further

ORDERED that a Pretrial Conference shall be conducted in this adversary proceeding on Tuesday, June 6, 2000, at 11:00 a.m., at the Paul G. Rogers Federal Building, 701 Clematis Street, Courtroom 6, West Palm Beach, Florida, to ascertain the readiness of the parties to proceed to trial on the issue of whether joint creditors of the Debtor and his wife existed on or about September 5, 1996, when the Debtor transferred his interest in the homestead proceeds to his wife.