MARY E. SNEED, joined by her husband, William F. Sneed, et al., v. COMA E. DAVIS, as Trustee of the Estate of William F. Sneed.

184 So. 865.
Divison A.
Opinion Filed December 7, 1938.

■■■■■■■■■■■■■■■■■■

*D. O. Rogers* and *Carver & Langston,* for Appellants; *Huffaker & Edwards,* for Appellees.

BUFORD, J.—In an amended bill of complaint it is alleged in effect:

"1. That complainant is the Trustee in bankruptcy of the estate of the defendant, William F. Sneed, Sr.;

"2. That in 1923 William F. Sneed, Sr., purchased 100 shares of the capital stock of the Mine & Mill Supply Company, a corporation; that the stock was issued to William F. Sneed, Sr.; that on July 16, 1929, Sneed surrendered the stock to the corporation which at Sneed's request re-issued to Sneed ten shares of capital stock in such corporation and issued at the same time thirty shares of such stock to Mary E. Sneed, the wife of William F. Sneed, Sr., thirty shares to Helen Sneed Rockford, the daughter of William F. Sneed, Sr., and 30 shares of such stock to William F. Sneed, Jr., the son of William F. Sneed, Sr., that subsequent to such time William F. Sneed, Sr. surrendered one share of his stock to the corporation; that at a still later time the corporation reduced its capital stock fifty percent and thereupon issued to William F. Sneed 4½ shares of stock in lieu of his 9 shares of stock, issued to Helen Sneed Rockford 15 shares of stock in lieu of her 30 shares of stock; issued to Wiliam F. Sneed, Jr., 15 shares of stock in lieu of his 30 shares of stock, and issued to Mary E. Sneed 15 shares of stock in lieu of her 30 shares of stock; that the wife and children paid no consideration to William F. Sneed, Sr., at the time the 90 shares of stock were issued to them; that such wife and children at the time the 45 shares of stock were issued to them paid no consideration to William F. Sneed, Sr., or to anyone for such stock; and that in each

instance the transfer of such stock was a gift and was fraudulent as to the then creditors of William F. Sneed, Sr.

"3. That at the time of the stock transfer in question by Sneed to the members of his family he was indebted to the First National Bank on a note in the sum of $11,400.00; that the note was renewed from time to time at 90 day intervals; that after the failure of the bank one of its Receivers obtained a judgment on December 17, 1930, against Sneed for $8,838.96; that thereafter the Franklin Liquidating Company acquired for value the judgment by assignment and that on August 20, 1937, it filed its claim on said judgment before the Referee in Baukruptcy who thereupon allowed the claim for $12,376.21, it being as shown by the answer the only claim filed in such bankruptcy proceedings.

"4. That on July 16, 1929, when William F. Sneed, Sr., surrendered to the Mine & Mill Supply Company the 100 shares of stock and had the 90 shares of stock re-issued to members of his family, he was insolvent; that such transfers were made without any consideration and for the purpose of defrauding his creditors; that they were made secretly and without the knowledge or consent of the Bank and that the subsequent dealings with and transfers of such stock were made in like manner by William F. Sneed, Sr., who prior to and since July 16, 1929, has been insolvent.

"5. That according to the schedule filed by the bankrupt there are no assets whatsoever to apply on the claims of the Franklin Liquidating Company or on other claims which may be filed in such proceedings that the voluntary transfer of the said stock by Sneed to his wife and children was' and is void as against the Bank and its assignee and that the plaintiff is entitled to have such stock transferred to him as assets of the estate for the payment of the claim against the bankrupt.

"6. That the 49½ shares of stock stand on record on the stock book of the Mine & Mill Supply Company as follows:

4½ shares in the name of William F. Sneed, Sr.

15 shares in the name of William F. Sneed, Jr.

30 shares in the name of Mary E. Sneed."

The purpose of the suit was to cancel the alleged transfer of stock and to subject the entire certificates of stock to the payment of the claim of Franklin Liquidating Company, as assignee of the Bank, a judgment creditor.

Answer was filed, containing along with other allegations, the following:

"Further answering the said paragraph of the said Bill of Complaint, these defendants say that on July 16, 1929, at which time the stock in question was transferred, William F. Sneed, Sr., was the head of a family residing in the State of Florida within the meaning of the provisions of Section 1, Article 9 of the Constitution of the State of Florida; that at such time the defendant William F. Sneed, Sr., resided in the City of Lakeland, Florida, together with his family, consisting of his wife and others; that at such time there was exempt to him, among other things, One Thousand Dollars' worth of personal property; that on July 16, 1929, at the time the transfers in question were made, the defendant William F. Sneed, Sr., owned no property of value other than the stock in question and that the same at such time, together with such other personal property as William F. Sneed, Sr., owned was in value worth less than One Thouand Dollars and that the right, title and interest of William F. Sneed, Sr., in and to such property was exempt from forced sale under process of any Court and that by reason thereof neither the said Bank nor its successors in interest were entitled to look to such stock as assets out of which to satisfy any claim it might have as against William F. Sneed, Sr.

"Further answering the Amended Bill of complaint, these defendants say that they are without knowledge as to whether the plaintiff is advised that the 49½ shares of stock of Mine & Mill Supply Company stand of record on the stock book of the corporation as follows: 4½ shares in the name of William F. Sneed, Sr., 15 shares of the stock in said William F. Sneed, Jr., and 30 shares in the name of Mary E. Sneed; but do say, as a matter of fact they do so stand of record on the stock book of said corporation.

"Further answering, these defendants specifically deny that the plaintiff has a clear right or any right to have the 4½ shares of stock issued to the said William F. Sneed, Sr., transferred and assigned to him as an agent for the benefit of the creditors of said estate but say that, as a matter of fact, the said stock stands of record on the books of such corporation in the name of William F. Sneed, Sr., that such stock has so stood in the name of William F. Sneed, Sr., for such a long period of time and the plaintiff's rights, if any, against such 4½ shares of stock was subject to an execution at law.

"Further answering, these defendants say that William F. Sneed, Sr., has filed a petition in the Federal Court, in and for the Southern District of Florida, Tampa Division, to be adjudicated a bankrupt; that he, as such bankrupt, is entitled to legal exemption and that he in his petition for bankruptcy and in other proceedings thereunder, is claiming the 4½ shares of stock in question as being a parcel of his homestead exemptions and that the matter of the rights of the creditors of William F. Sneed, Sr., in so far as such 4½ shares of stock is concerned, is being handled by and is under the jurisdiction of the bankruptcy court proper."

Plaintiff filed motion for decree on bill and answer.

The answer was held insufficient to state a defense and from the order so holding, appeal is taken.

We have quoted only a portion of the answer because in the paragraphs quoted we find a complete defense to the amended bill of complaint.

Section 1 of Article X of our constitution is familiar to every student and there is no need to quote it here. , Under its terms personal property is as effectively exempt from forced sale as is real estate.

The motion for decree on bill and answer admits the allegations of the answer which are. well pleaded. Therefore it admits:

"1. That William F. Sneed, Sr., at the time of the transfer was the head of a family residing in the State of Florida, within the meaning of Section 1, Article 10 of the Florida Constitution.

"2. That there was exempt to William F. Sneed, Sr., at such time within the meaning of such Section and Article $1000.00 worth of personal property.

"3. That the said stock, together with all other personality owned at such time by William F. Sneed, Sr., was worth less than $1000.00."

We are dealing with the rights of the parties as of the date of' the first re-issue of the stock involved, July 16, 1929, and not considering what their respective rights might have been at some later day, had not this re-issue been accomplished at that time. The general applicable rule is stated in 27 C. J. 438, as follows:

"According to the weight of authority a debtor in disposing of property can commit a fraud on creditors only by disposing of such property as the creditor has a legal right to look to for satisfaction of his claim, and hence a sale, gift or other disposition of property which is by law absolutely exempt from the payment of the owner's debts cannot be impeached by creditors as in' fraud of their rights. Creditors have no right to complain of dealings with prop-

erty which the law does not allow them to apply on their claims, even though such dealings are with a purpose to hinder, delay or defraud them."

In Murphy v. Farquhar, 39 Fla. 350, 22 Sou 681, Mr. Chief Justice Taylor speaking for this Court, said:

"Final hearing was had upon the pleadings and evidence reported, resulting in a final decree in favor of the complainants, in conformity to the prayers of their bill, by which the sale and conveyance of said property by the sheriff under the judgment in favor of W. G. Farquhar, and the sale and conveyance thereof by the commissioner under the order of the County Court on the application of Jane S. Murphy, as administratrix of W. G. Farquhar, deceased, were adjudged to be wholly null and void, and decreed to be cancelled, and the property adjudged to be the homestead of the complainants. From this decree the defendants below have appealed and allege as error: 1st. The overruling of their demurrer to the bill of complaint. 2nd. The granting of the final decree in the cause upon the ground that it is not supported by the evidence submitted.

"There is no merit in the defendants' demurrer to the bill. The complainants plant themselves in their bill solely upon their homestead rights in and to the land in controversy. Whether the deed of conveyance made in 1883 by the husband, Arthur A., directly to his wife, Harriet S., was, or was not, void and effectual in law, to carry to her the legal title to said land, because of the supposed inability of a husband to convey real estate by deed directly to his wife, can make no material difference under the circumstance of this case, if it be true in fact that the land in dispute is and has been all along the bona fide homestead and place of actual and permanent residence of the complainants, and there has been no abandonment thereof by them as their home and place of permanent abode. If it has thus been continuously their

home and place of residence, in good faith and without any permanent abandonment, it can make no difference whatever with any rights that the defendants are shown to have under the judgment in favor of W. G. Farquhar against Arthur A. Farquhar, whether said deed from Arthur A. to his wife be valid or void, since, under our constitution, said judgment not being for the purchase money of said land, nor for house, field or other labor performed on the same, does not bind the homestead as a lien, and the judgment creditor has no such interest or concern therein as will give him the right to question in any way the *bona fides* or validity of any transfers of the *legal title* thereto as between those who, under the Constitution, are entitled to the unmolested occupancy and possession thereof. If the deed from Arthur A. to Harriet S. was void and ineffectual to transfer the *legal title,* then such legal title still remains in Arthur A., and, so far as his right to occupy and enjoy said homestead, free of the liens of all unexpected judgments, or of any sale or molestation thereunder is concerned, his *attempted* transfer of the legal title to his wife can make no difference whatever."

In West Florida Grocery Company v. Teutonia Fire Ins. Co., 74 Fla. 220, 77 Sou. 210, Mr. Chief Justice BROWNE, speaking for the Court, said:

"We will now consider the right of Reddick to a homestead exemption in the proceeds of the insurance policy as against all his creditors except the West Florida Grocery Company.

"In his answer to the Bill of Interpleader he claimed his exemption, and he testified before the master, and it was not disputed, that he was the head of a family residing in the State of Florida, and that his family was dependent upon him for support, and that he had no other funds or property.

"The Constitution of our State provides, 'A homestead to the extent of one hundred and sixty acres of land, or the

half of one acre within the limits of any incorporated city or town, owned by the head of a family residing in this State, together with one thousand dollars' worth of personal property, and the improvements on the real estate, shall be exempt from forced sale under process of any court.'

"The exemption of 'one thousand dollars' worth of personal property' is as sacred as any other part of the homestead exemption, and a person claiming it is entitled to the protection of the courts in any proceeding which seeks the appropriation of it to the payment of debts. It is true that the constitutional provision is that it 'shall be exempt from forced sale under process of any court,' but that will not be construed to mean that where it is sought to take from a person rightfully claiming his homestead exemption of 'one thousand dollars' worth of personal property' he cannot protect himself except from a forced sale. Such a construction would defeat the beneficent purpose of the Constitution where, as in the instant case, the exemption claimed is in money.

"We think that the exemption provided for in the Constitution applies not only to formal and technical process, but to any judicial proceedings of law or in equity, which seek the appropriation of property to the payment of debts. In Hines v. Duncan, 79 Ala. 112, 58 Am. Rep. 580, the court said, 'statutes conferring on a debtor the right to exemption of property from sale for the payment of debts have been generally regarded as founded in a humane and enlightened policy, having respect to the common welfare as well as to the benefit of the individual debtor. Their obvious purpose is to secure to each family a home and means of livelihood, irrespective of financial misfortune, and beyond the reach of creditors; security of the state from the burden of pauperism, and of the individual citizen from destitution. Such statutes are entitled to a liberal construction, a con-

struction in conformity with the benevolent spirit which moved their enactment. Whilst the language of the statute is 'shall be exempted from levy and sale under execution, or other process for the collection of debts' a formal, technical process is not requisite. The exemption is, in spirit, and substantially, from the payment of debts; and the property is exempt from sale by either process of law or in equity, the subject of which is its appropriation to the payment of debts."

See also Hutchison Shoe Co. v. Turner, 100 Fla. 1120, 130 Sou. 623; Fidelity Casualty Co. of N. Y. v. Magwood, 107 Fla. 208, 145 Sou. 67, and Bank of Greenwood v. Rawls, 117 Fla. 381, 158 Sou. 173.

A case more in point than any other Florida case which we have found is that of Rigby v. Middlebrooks, 102 Fla. 148, 135, Sou. 563, in which we said:

"This was a bill brought by a creditor to cancel a conveyance alleged to have been in fraud of creditors. That part of the answer alleging that the property alleged to have been fraudulently conveyed was the homestead of the defendant who was the head of a family residing thereon is responsive to the bill because as to exempt property there are no creditors within the meaning of statutes prohibiting the conveyance of property in fraud of creditors and as homesteads are exempt from execution, a creditor acquires no rights in regard thereto. See Fellows v. Lewis, 65 Ala. 343, 35 Am. Rep. 1; Cox v. Birmingham Dry Goods Co., 105 Ala. 320; Hart, et al. v. Gulf Fertilizer Co., a corporation, ct al., 91 Fla. 991, 108 Sou. 886."

In the case of Nance v. Nance, 84 Ala. 375, 4 Sou. 699, it was said:

"A creditor cannot impeach as fraudulent a sale of voluntary disposition of property which by statute is exempt from the payment of debts. In a conveyance or other disposition

of such property he has no interest, and is not thereby delayed, hindered or defrauded, as he could not have subjected the property if retained by the debtor. At the time the materials were furnished by the husband, personal property to the amount of $1,000 was exempt. The duty to select what particular property he will retain as exempt is devolved on the debtor, when he owns personal property exceeding in value the amount exempted, and such selection must be made before there is a sale under legal process. But if he has not property exceeding in value the amount exempted, a selection is not required. In such case the statute 'attaches the exemption as absolutely and unconditionally as if the particular property was specially designated and declared exempt.' Alley v. Daniel, 75 Ala. 403 ; Fellows v. Lewis, 65 Ala. 343."

In Skinner v. Jennings, *et ux*, 137 Ala. 295, 34 Sou. 622, it was said:

"The purpose of the bill is to have said bill of sale declared a general assignment, enuring to the benefit of complainant, a creditor of said R. M. Jennings, and his other creditors existing at the date of said conveyance; that said Janie G. Jennings be held to be a trustee under said bill of sale for the benefit of all of such creditors, and that the trust estate be administered under the orders and directions of the court, etc.

"The contention cannot be sustained. As to this property, being less in value than $1,000, the owner, it may be said, had no creditors and he was free to do with it as he chose, —to sell or give it to his wife, without the right of any creditor to complain, since it interfered with no right of his, legal or equitable. To allow that he was incapable of conveying it to his wife, to pay a debt he owed her,—though if he did not owe it would make no difference—without it having the effect to convert the conveyance into a general as-

signment would be to qualify and limit his exemption in a manner not sanctioned by the letter or policy of the exemption laws. Fellows v. Lewis, 65 Ala. 343, 39 Am. Rep. 1; Wright v. Smith, 66 Ala. 514; Shirley v. Teal, 67 Ala. 449; Lehman Durr & Co. v. Bryan, Id. 558; Clewis v. Malone, 119 Ala. 312, 24 Sou. 767. His right to it was so perfect that he was under no legal obligation to have it exempted to him by any court proceeding. A selection of it as exempt was unnecessary, the law, without the doing of any act on his part, intervening and attaching the right of exemption as absolutely as if the particular property had been specifically designated and declared exempt. Alley v. Daniel, 75 Ala. 403; Jackson v. Wilson, 117 Ala. 432, 23 Sou. 521."

To the same effect is Clewis v. Malone, *et al.*, 119 Ala. 312, 24 Sou. 767.

So it is that the allegations of the answer are suficient to show that the corporate stock at the time of the alleged fraudulent conveyance was exempt from sale under execution and, therefore, was property which could not be subjected to the claim of the creditor against the consent of the owner and as to which there could be no conveyance in legal fraud of creditors. If the pleadings showed that Sneed at that time owned other personal property and that the aggregate value of all his personal property was more than a thousand dollars, then there might have been some merit in the contention that he would be required at the time to designate that property which he claimed as exempt, but where the pleadings show that the total value of all his personal property is less than $1000.00, it is all exempt under the Constitution and the Constitution is effective to protect it as homestead property.

The order is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

So ordered.

Reversed and remanded.

TERRELL, C. J., and WHITFIELD, BROWN and CHAPMAN, J. J., concur.