791 So.2d 1078 (2001)
Alan L. GOLDENBERG and Alan L. Goldenberg, M.D., P.A., Appellants,
v.
Shirley SAWCZAK and Kenneth Welt, as Chapter 7 Trustee, Appellees.
No. SC00-1527.
Supreme Court of Florida.
May 3, 2001.
*1079 Jeanne C. Brady and Frank R. Brady of Brady & Brady, P.A., Boca Raton, FL, for Appellants.
Herman J. Russomanno of Russomanno & Borrello, P.A., and Timothy J. Norris of Buchanan Ingersoll P.C., Miami, FL, for Appellees.
WELLS, C.J.
We have for review a question of Florida law certified by the Eleventh Circuit Court of Appeals that is determinative of a cause pending in the federal courts and for which there appears to be no controlling precedent. We have jurisdiction. See art. V, § 3(b)(6), Fla. Const.
The Eleventh Circuit Court of Appeals asks:
ARE THE CASH SURRENDER VALUES OF DR. GOLDENBERG'S "ANNUITY CONTRACTS" EXEMPT FROM LEGAL PROCESS UNDER FLA. STAT. ANN. § 222.14 (WEST 1998)?
In re Goldenberg, 218 F.3d 1264 (11th Cir.2000). We answer the question in the affirmative.
In 1989, Dr. Alan Goldenberg executed seven contracts with various institutions.[1] The contracts are commonly referred to as single premium deferred annuities. These contracts each required Goldenberg to make a one-time premium payment in 1989, which he did in exchange for the right to receive streams of monthly payments commencing on the maturity date, the earliest being in 2009. Goldenberg is styled as the "owner" and "annuitant" of each of these contracts. Under the terms of these contracts, Goldenberg may surrender the contract prior to the specified maturity date and receive the cash surrender value.[2] The surrender value, in part, *1080 is affected by when the contract is surrendered: the earlier the contract is surrendered, the higher the surrender penalty. At maturity, Goldenberg, as annuitant, is entitled to receive the payment streams.
In 1992, Goldenberg negligently performed gall bladder surgery on Shirley Sawczak. Goldenberg completely transacted Sawczak's common bile duct, causing her life-long injuries. Sawczak sued Goldenberg, who carried no malpractice insurance. On May 1, 1996, the same day the jury was to begin its deliberations in the medical malpractice suit, Goldenberg filed bankruptcy. That same day, the bankruptcy court granted Sawczak's emergency motion to allow the jury to deliberate. The jury returned a verdict in Sawczak's favor against Goldenberg in the amount of $4,000,629.
On May 31, 1996, in filings before the bankruptcy court, Goldenberg claimed $3,791,119 in assets, of which amount he claimed $3,751,678 as exempt. Of the exempt amount, Goldenberg claimed $355,894 as the current value of the seven contracts. Apparently, Sawczak only introduced six of the seven contracts into evidence in bankruptcy proceedings. The bankruptcy court referred to the six contracts in evidence as "annuity contracts." Sawczak claimed that the cash surrender value of these policies were not exempt under section 222.14, Florida Statutes (1995), because moneys received from the exercise of a surrender provision are not proceeds. However, the bankruptcy court found these contracts exempt from legal process under section 222.14.[3] The bankruptcy court also denied the remainder of Sawczak's exceptions to Goldenberg's claimed exemptions, which included: (1) $2,546,319 in Goldenberg's IRA accounts; (2) $4,460 in Goldenberg's salary account; and (3) $3,259 in Goldenberg's office management account.
Sawczak and the bankruptcy trustee appealed to the federal district court. The district court reversed as to the annuity contracts but affirmed the bankruptcy court's conclusion regarding Goldenberg's other claimed exemptions. The district court found that Goldenberg did not own annuity contracts. Instead, that court concluded that Goldenberg owned "options" to purchase annuities when the contracts matured. The district court found that the periodic payments to an annuitant beginning at a fixed date and continuing for a fixed term of years or for life constitute the "proceeds." Thus, the district court found that section 222.14 did not exempt the contracts from legal process prior to the stated maturity date in the contract.
On appeal, the Eleventh Circuit Court of Appeals expressed no opinion regarding the conflicting opinions between the district court and bankruptcy court regarding the contracts; rather, that court certified the question to us. The Eleventh Circuit affirmed the district court on the remaining issues. This petition for review follows.
The federal bankruptcy code authorizes a state to opt out of the federal scheme of exemptions in favor of state established exemptions. See 11 U.S.C. § 522(b) (1994). Florida, by virtue of section *1081 222.20, Florida Statutes (1995), has opted out of the federal scheme. See Owen v. Owen, 500 U.S. 305, 309, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). The Florida exemption statute at issue, section 222.14, Florida Statutes (1995), and its caption provide:
Exemption of cash surrender value of life insurance policies and annuity contracts from legal process.The cash surrender values of life insurance policies issued upon the lives of citizens or residents of the state and the proceeds of annuity contracts issued to citizens or residents of the state, upon whatever form, shall not in any case be liable to attachment, garnishment or legal process in favor of any creditor of the person whose life is so insured or of any creditor of the person who is the beneficiary of such annuity contract, unless the insurance policy or annuity contract was effected for the benefit of such creditor.
(Emphasis added.)
The Legislature enacted the predecessor of section 222.14 in 1925.[4] At that time, the Legislature provided an exemption from legal process for the cash surrender values of life insurance policies, but the Legislature did not provide an exemption for proceeds of annuity contracts. In 1978, the Legislature amended the statute, and added the "proceeds of annuity contracts" language to the exemption.[5]
Goldenberg argues that Florida has a long tradition of broadly construing exemption statutes. He notes that the phrase, "upon whatever form," written in section 222.14 and other exemption statutes, indicates that the form of payment is immaterial when determining whether the exemption applies. Thus, Goldenberg argues, moneys derived from surrendering an annuity should be exempt as being only a separate form of payment under the annuity contract. Further, Goldenberg argues that legislative history reveals that in 1977 and 1978, the Legislature specifically intended to provide the same exemption protection for annuities as the existing protection for life insurance policies.
Conversely, Sawczak argues that section 222.14 distinguishes between exemptions for "cash surrender values" in the case of life insurance contracts and "proceeds" in the case of annuities. No reliance on legislative history is necessary, Sawczak contends, because the statute is clear. She argues that the plain meaning rule applies to the terms "cash surrender value" and "proceeds." Sawczak also contends that the principle of expressio unius est exclusio alterius applies here to exclude cash surrender value from the definition of proceeds. Thus, Sawczak contends that "annuity" contracts, to the extent of their cash surrender values, should be subject to legal process.
Florida has a long-standing policy that favors liberally construing exemption statutes so as to prevent debtors from becoming public charges. See Killian v. Lawson, 387 So.2d 960, 962 (Fla.1980); Sneed v. Davis, 135 Fla. 271, 184 So. 865, 869 (1938). We have construed section 222.14 both prior to and after the 1978 amendment. The Legislature has not responded to alter our construction in either case. Long-term legislative inaction after a court construes a statute amounts to legislative acceptance or approval of that judicial construction. See State v. Hall, 641 So.2d 403, 405 (Fla.1994); White v. Johnson, 59 So.2d 532, 533 (Fla.1952).
*1082 In 1934, we had before us a question concerning the application of the exemption statute to the cash surrender value of a life insurance policy. See Bank of Greenwood v. Rawls, 117 Fla. 381, 158 So. 173 (1934). In Bank of Greenwood, the husband purchased a life insurance policy on his life and named his wife the beneficiary of the policy. See id. at 174. This policy contained a contractual provision where the insured husband could surrender the policy in case of disability and extinguish whatever potential interest his wife had as beneficiary to the policy. See id. at 174 (opinion on rehearing). While insolvent, the insured husband exercised the disability provision and surrendered the policy. See id. The life insurance company sent the husband a settlement check, which he endorsed to his wife who deposited the check. See id.
In a garnishment proceeding instituted to attach the moneys derived from the surrender of the policy, we stated:
[T]he "cash surrender value" of a life insurance policy, as contemplated by our statute above referred to,[[6]] includes any cash value that may be obtained either by means of negotiation or pursuant to an agreement for surrendering the policy in consideration of a sum of money to be paid in whole or in part conditioned upon a surrender of the life insurance feature of the policy....
Id. at 175 (opinion on rehearing). In reaching this conclusion, we emphasized the "upon whatever form, shall not in any case" language in the exemption statute. See id. at 174-75 (opinion on rehearing) (emphasis added). As we later explained in Zuckerman v. Hofrichter & Quiat, P.A., 646 So.2d 187 (Fla.1994), the clarity of these words indicate that the form of payment is not relevant for purposes of having the exemption apply.[7]
The second relevant case construing section 222.14 is In re McCollam, 612 So.2d 572 (Fla.1993). In McCollam, the issue concerned the meaning of "annuity contracts" in section 222.14. See id. at 574. In settling a wrongful death lawsuit, Travelers Insurance Company (Travelers) entered into a structured payment agreement with Paula McCollam in 1985, where Travelers became obligated to make monthly payments to McCollam for a term of years. In 1987, McCollam was involved in a traffic accident with Thomas LeCroy over which he sued McCollam. In 1989, McCollam filed bankruptcy, but claimed as exempt pursuant to section 222.14 the monthly payments received from Travelers.
In finding the structured payment agreement at issue to be an annuity contract, we said that "[s]ection 222.14 clearly exempts all annuity contracts from creditor claims." Id. Further, we stated that, "had the Legislature intended to limit the exemption to particular annuity contracts, it would have included such restrictive language when the statute was amended to include annuity contracts." Id. The Legislature *1083 has not added any restrictive language to the statute.
The terms of section 222.14 are clear. See McCollam, 612 So.2d at 574. No reliance on legislative history is needed to determine intent where the statutory language is clear. See id. at 573. The statutory addition in 1978 simply added "annuity contracts" to the existing statute. Sawczak would have us define the term "proceeds" to include only those payments that commence at the maturity date of Goldenberg's policies. In other words, Sawczak maintains that moneys received by surrendering an annuity contract are not proceeds. We do not find a basis for such a narrow definition of "proceeds" in the statute or in the commonly accepted definition of proceeds. The dictionary definition of proceeds is "the net amount received after deduction of any discount or charges." Merriam Webster's Collegiate Dictionary 929 (10th ed.1994). The only difference between receiving payment streams after maturity and a settlement payment before maturity is the surrender charge. Thus, we conclude that the "proceeds of annuity contracts" include moneys received from surrendering an annuity contract prior to maturity.
Accordingly, we answer the certified question in the affirmative and hold that the proceeds of an annuity contract where there is a surrender penalty are exempt from legal process by virtue of section 222.14. We return the case to the Eleventh Circuit Court of Appeals for further proceedings.
It is so ordered.
SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] At oral argument Sawczak conceded that these contracts were garden-variety annuity contracts.
[2] Sawczak argues that all interests in property a debtor holds passes to the bankruptcy estate upon the debtor's bankruptcy filing. See 11 U.S.C. § 541 (1994). If the cash surrender value of an annuity contract is not exempt from legal process, according to Sawczak, the contractual right to exercise the surrender provision would likewise pass to the bankruptcy trustee, who could exercise it for the benefit of the debtor's creditors.
[3] There was no finding that Goldenberg fraudulently purchased the contracts to conceal assets from Sawczak, presumably because Goldenberg purchased the contracts years prior to the malpractice. Parenthetically, the bankruptcy court noted that the contracts were purchased with exempt pension funds. We find the source of funds to be irrelevant for purposes of the application of section 222.14.
[4] See ch. 10154, § 1, Laws of Fla. (1925).
[5] See ch. 78-76, § 1, Laws of Fla.
[6] See chapter 10154, § 1, Laws of Fla. (1925); Comp. Gen. Laws § 7066 (1927).
[7] In Zuckerman, we construed section 222.18, Florida Statutes (1991), which exempts disability income benefits from legal process. See Zuckerman, 646 So.2d at 188. Section 222.18 contained the words, "of whatever form" as opposed to "upon whatever form," found in section 222.14. This semantic difference did not preclude us from using the Bank of Greenwood reasoning in Zuckerman regarding the "upon whatever form" language. In Zuckerman, we reasoned that the clarity of the words "of whatever form" were dispositive in favor of the exemption statute applying to exempt from process moneys received from settling a lawsuit that concerned whether there was coverage under a disability policy. See Zuckerman, 646 So.2d at 188.