**In re Cynthia H. LANKRY, Debtor.**

**Gregory K. Crews, Chapter 7 Trustee, Plaintiff,**

**v.**

**Abraham Lankry, Defendant.**

**Bankruptcy No. 99–5679–3F7.
Adversary No. 00–346.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

June 20, 2001.

Don H. Lester, Jacksonville, FL, for defendant.

Gregory A. Lawrence, Jacksonville, FL, for plaintiff.

Gregory K. Crews, Jacksonville, FL, Chapter 7 Trustee.

David J. Pinkston, Jacksonville, FL, for debtor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Proceeding is before the Court on the Motion for Summary Judgment filed by Abraham Lankry ("Defendant") on May 16, 2001. (Doc. 12.) Gregory K. Crews, Chapter 7 Trustee ("Plaintiff"), filed a Memorandum of Law in opposition to Defendant's Motion for Summary Judgment on June 4, 2001. (Doc. 18.) Upon review of the Motion for Summary Judgment, Plaintiff's Memorandum in opposition and the accompanying affidavits and arguments, the Court finds it appropriate

to deny the Motion for Summary Judgment.

## FINDINGS OF FACT

On August 27, 1977, Defendant married Cynthia H. Lankry ("Debtor") in Jacksonville, Florida.

During the marriage, Defendant acquired two pieces of real property and titled them solely in his own name: (1) 2062 University Boulevard, Jacksonville, Florida; and (2) 2050 University Boulevard, Jacksonville, Florida ("the non-entireties properties").

During the marriage Defendant and Debtor also acquired four parcels as tenants by the entirety: (1) 2449 University Boulevard, Jacksonville, Florida; (2) 53½ North Roscoe Boulevard, Ponte Vedra Beach, Florida; (3) 53½ A North Roscoe Boulevard, Ponte Vedra Beach, Florida; and (4) 5530 Floral Bluff Road, Jacksonville, Florida ("the entireties properties").

Additionally, during the marriage Defendant and Debtor acquired a 1991 Toyota automobile and a 1988 Regal boat.[1]

In 1997, Defendant and Debtor separated.

On January 12, 1998, Defendant and Debtor entered into a property settlement agreement styled as a "Petition for Dissolution of Marriage." (Ex. A to the Affidavit of Defendant, filed as Adv.Doc. 13.) The settlement agreement provided for dissolution of the marriage. The settlement agreement also provided for Defendant to maintain his sole ownership interest in the non-entireties properties and for Debtor to transfer any interest she held in the entireties properties to Defendant. The settlement agreement finally provided

---

**1.** The Court notes that it considers the personal property transferred pursuant to the settlement agreement to be "non-entireties properties" for the purpose of disposing of the Motion for Summary Judgment.

for Debtor to surrender any rights in the 1991 Toyota and 1988 Regal boat.

Under the settlement agreement Debtor agreed to assume about $69,000.00 in unsecured debt. Defendant also agreed to assume the mortgage obligations on all of the real properties at issue.

The settlement agreement did not provide for Debtor to receive any marital assets. Debtor also expressly waived any right to alimony in the settlement agreement.

On February 20, 1998, the Seventh Judicial Circuit Court in and for St. Johns County, Florida entered a Final Judgment of Dissolution of Marriage finalizing the divorce of Defendant and Debtor and approving the settlement agreement. (Ex. B to Adv.Doc. 13.) The Final Judgment of Dissolution provides, in relevant part:

> The Marital Settlement Agreement of the parties dated January 12, 1998 is approved, ratified and confirmed and made a part of this Final Judgment of Dissolution of Marriage. The parties are ordered to comply with same.

On March 5, 1998, Debtor filed her first voluntary petition for Chapter 13 bankruptcy protection in the Middle District of Florida, Jacksonville Division, Case No. 98–1753–3P3.

On March 17, 1998, Debtor executed three quitclaim deeds conveying her interests in the entireties properties to Defendant. (Composite Ex. 2 to the Rule 2004 examination of Defendant, filed as Adv. Doc. 20.)

On January 13, 1999, this Court dismissed Debtor's first Chapter 13 case. (Case No. 98–1753–3P3, Doc. 27.)

On July 26, 1999 Debtor commenced the current Case by filing a voluntary petition for Chapter 7 bankruptcy protection.

On November 1, 2000, Plaintiff filed the instant adversary Complaint. (Adv.Doc. 1.) Plaintiff contends that the surrender by Debtor of any interest in the non-entireties properties and the transfer of any interest in the entireties properties was fraudulent as to existing and future creditors of Debtor under Chapter 726 of the Florida Statutes. Plaintiff seeks to recover the properties or proceeds therefrom for distribution to creditors under Florida Statutes § 726.108.

On May 16, 2001, Defendant filed the instant Motion for Summary Judgment. Defendant contends that he is entitled to judgment as a matter of law because no "transfer" of the non-entireties properties occurred and because the entireties properties were not "assets" attachable by Plaintiff under § 726.102. Specifically, Defendant argues that the non-entireties properties never belonged to Debtor, and therefore that Debtor could not have transferred them. Defendant further asserts that the entireties properties could not qualify as "assets" under § 726.102 because property held as a tenancy by the entireties is specifically exempt from treatment as an "asset" by § 726.102(2)(c).

On June 4, 2001, Plaintiff filed a Memorandum of Law in opposition to the Motion for Summary Judgment. Plaintiff counters that Debtor held an interest in the non-entireties property by virtue of its status as marital property to be equitably distributed pursuant to Florida Statutes § 61.075. Plaintiff also argues that the tenancy by the entireties holding the entireties properties became a tenancy in common upon dissolution of the marriage between Debtor and Defendant, and remained thus until Debtor deeded away the former entireties properties weeks later. Therefore, Trustee asserts, the entireties properties were held by Defendant and Debtor as a tenancy in common at the

time of the transfer and are not excepted from treatment as fraudulently transferred "assets" under 726.102(2)(c).

## CONCLUSIONS OF LAW

### I. THE SUMMARY JUDGMENT STANDARD

Summary judgment under Rule 56 is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c)(2000). A moving party bears the initial burden of showing a court that there are no genuine issues of material fact that should be decided at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 607 (11th Cir.1991). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to a court that there is an absence of evidence to support a non-moving party's case. *See Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548. In determining whether a moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, a court must draw inferences from the evidence in the light most favorable to a non-movant and resolve all reasonable doubts in that party's favor. *See Spence v. Zimmerman*, 873 F.2d 256 (11th Cir.1989). If a moving party satisfies its burden, then a nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. *See id.*

In the instant case, Defendant claims entitlement to summary judgment on the grounds that Plaintiff cannot present any facts sufficient to establish two particular elements of the fraudulent transfer tests—the "transfer" element as to the non-entireties properties and the "asset" element as to the entireties properties. Plaintiff counters that there is a genuine possibility that he could supply evidence satisfying those elements.

### II. THE FLORIDA FRAUDULENT TRANSFER ACT—CHAPTER 726

Florida's enactment of the Uniform Fraudulent Transfer Act is found in § 726.105 and § 726.106 of the Florida Statutes. Section 726.105 provides, in relevant part:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(b) Without receiving reasonably equivalent value in exchange for the transfer or obligation; and the debtor:

(1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

FLA.STAT. § 726.105 (2001). Section 726.106 provides, in relevant part:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the

transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

FLA.STAT. § 726.106 (2001).

The Court does not find it necessary to delve into all of the elements of the fraudulent transfer standards. The Court limits the instant inquiry to the narrow questions before it: (1) whether or not a triable issue exists as to the fact that a "transfer" of the non-entireties properties occurred; and (2) whether or not a triable issue exists as to the fact that the entireties properties constitute "assets" that can be transferred.

### III. NON–ENTIRETIES PROPERTIES: "TRANSFERRED" BY DEBTOR?

A party seeking to avoid a transfer as fraudulent must prove by a preponderance that a "transfer" actually occurred. A transfer cannot occur under § 726.107 until a transferor has acquired rights in any assets transferred. *See* FLA. STAT. § 726.107(4) (2001).

#### A. Unequal distribution of marital property or liability: "transfer" for § 726 purposes?

A court overseeing a Florida marriage dissolution proceeding is obligated to operate under the premise that marital properties and liabilities should be distributed equally absent some justification for an unequal distribution. *See* FLA.STAT. § 61.075 (2001). In other words, once a court determines that a particular piece of property or a debt is a "marital property" or a "marital liability", then there is a presumption that the property or liability

should be allocated into equal parts to each spouse upon dissolution.

Courts have found that, in a state where dissolution is governed by the "equitable distribution" principle, a spouse has a property right in the marital property such that a spouse's creditors may attack a distribution as a fraudulent transfer should it turn out to be unjustifiably unequal. *See e.g. Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 702 (6th Cir.1999). These courts essentially find that a dissolution agreement that purports to transfer marital properties disproportionately to one spouse without citing some relevant justification for departure from equitable distribution constitutes a fraudulent transfer as to the creditors of the spouse surrendering a disproportionate share of marital assets. *See id.* "We conclude that the lottery proceeds were part of the Fordus' marital estate and the Debtor thus held a property interest in such proceeds that was transferred to Ms. Fordu under the Separation Agreement ... [t]his transfer was properly subject to challenge by the Trustee through the assertion of his avoidance claims." *Id.*

These courts find that approval of a separation agreement by a state court does not have a collateral estoppel effect upon a subsequent challenge of a separation agreement by a bankruptcy trustee on fraudulent transfer grounds because the spouses' creditors were not parties to the separation agreement or to the dissolution proceedings. *See Fogel v. Chevrie (In re Chevrie)*, 2001 WL 120132, *7 (Bankr. N.D.Ill.2001).

No Florida court has addressed the question of whether or not an unjustified unequal distribution of a non-entireties marital property or liability constitutes a "transfer" for § 726 purposes.

This Court finds that an unjustified unequal distribution of marital properties

or liabilities constitutes a "transfer" that may be avoided under § 726. The Court finds it inappropriate to create a shelter for divorcing spouses to unjustifiably depart from the equitable distribution principle in order to defraud one spouse's creditors.

■ The Court finds that, in order to establish that a separation agreement fraudulently transferred non-entireties properties acquired during a marriage or fraudulently caused one former spouse to incur a disproportionate share of liabilities incurred during a marriage, a trustee must satisfy a three-prong test by a preponderance. First, a trustee must prove that a property or liability in question was in fact a "marital property" or a "marital liability" under Florida law. Second, a trustee must also prove that a distribution of a marital property or liability was in fact unequal, to the detriment of the creditors of the spouse surrendering a disproportionate share of marital assets or assuming a disproportionate share of marital liabilities. Finally, a trustee attacking an unequal distribution as fraudulent must also show that a departure from equitable distribution was not justified by any of the factors recognized as relevant to a distribution determination under Florida law.

### B. Application to the instant case

■ The Court finds that a genuine issue of material fact exists as to whether or not Debtor had an interest in the non-entireties properties that was transferred away by the entry of the Final Judgment of Dissolution.

Specifically, the Court finds that it has insufficient evidence before it to determine as a matter of law that the non-entireties properties are or are not marital properties surrendered by Debtor in an unjustifiably unequal distribution of marital properties. Insufficient evidence is before the Court on the marital nature of the property transferred, and neither party presented any evidence as to the existence or nonexistence of any justification for departure from equitable distribution. Therefore, the Court will deny Defendant's Motion for Summary Judgment as to the non-entireties properties.

### IV. ENTIRETIES PROPERTIES: "ASSETS" OF DEBTOR?

■ A party seeking to avoid a transfer as fraudulent must prove by a preponderance that any properties allegedly transferred were "assets" of a transferor. Exempt assets do not constitute transferrable "assets" under § 726, because a transfer of such assets does not prejudice a transferor's creditors, who could not have obtained satisfaction from such assets before any transfer.

### A. Dissolution of a tenancy by the entireties and the timing of a transfer

■ It is well established under Florida law that exempt property may not be recovered by a trustee on fraudulent transfer grounds because such property could not have been attached by creditors before any transfer. *See Sneed v. Davis*, 135 Fla. 271, 184 So. 865 (1938). The Florida fraudulent transfer act specifically excludes from treatment as a recoverable "asset" property held as a tenancy by the entireties to the extent that such property is subject to process by a creditor holding a claim against only one spouse. *See* Fla. Stat. § 726.102(2)(c) (2001). Therefore, as between spouses still married, "where the original transfer into entireties status is **not** fraudulent, a subsequent transfer of exempt entireties property [to one spouse] is **not** avoidable." *Dzikowski v. Delson (In re Delson)*, 247 B.R. 873, 876 (Bankr. S.D.Fla.2000) (emphasis original).

■ Upon dissolution of a marriage any property held by the spouses as a tenancy

by the entireties automatically converts into a tenancy in common, which may be attached by a creditor holding a claim against either spouse. *See* FLA.STAT. § 689.15 (2001). Therefore, upon dissolution any property formerly held as a tenancy by the entireties loses the protection of § 726.102(2)(c) and constitutes an "asset" that may be recovered on fraudulent transfer grounds should a post-dissolution transfer take place. *See Cohen v. Bellamy (In re Shannis),* 229 B.R. 234, 237 (Bankr. M.D.Fla.1999).

■■■ However, if a final judgment of dissolution itself acts to transfer property from a tenancy by the entireties to one of the former spouses in fee simple, then the property transferred passes to the grantee spouse as if the other spouse predeceased him. *See Sharp v. Hamilton,* 520 So.2d 9, 10 (Fla.1988). Former entireties property may not be attached after dissolution by a creditor of a spouse that so "predeceased." *See id.* The property passes to a "surviving" spouse in fee simple free of any claims of a "predeceased" spouse's creditors.

The implication of this exception to the decay of a tenancy by the entireties into a tenancy in common is that a creditor of a "predeceased" spouse may not attack a transfer of former entireties property explicitly embodied by a judgment of dissolution as fraudulent under § 726, because such property never became an "asset" that a creditor of the "predeceased" spouse could foreclose upon. The property passed from entireties ownership to sole ownership by a person against whom the "predeceased" spouse's creditors have no claim in "the blink of an eye"—an interval too short for a lien to attach under Florida law. In such a situation a transferee spouse holds any former entireties property free and clear.

However, if a final judgment of dissolution merely approves of a previously executed settlement agreement and orders the former spouses to comply, then it does not act as a transfer of property from a tenancy by the entireties directly to one spouse in fee simple. *See Hadden v. Cirelli,* 675 So.2d 1003, 1005 (Fla.Ct.App. 1996). As the *Hadden* court stated,

> A final dissolution judgment can transfer a party's interest in real property when the language of the judgment specifically operates to transfer an interest or recognizes a specific interest ... [those] cases are factually distinguishable because the language in the dissolution judgments was self-executing; that is, the language either actually transferred a property interest from one spouse to another ... In contrast, the Haddens' 1978 dissolution judgment was not self-executing ... The judgment merely incorporated the terms of the parties' settlement agreement and then directed the father to transfer his interest ... When he failed to comply, the judgment did not automatically operate to transfer his interest ...

*Id.* at 1005–1006.

Therefore, if a judgment of dissolution is not self-executing but merely incorporates a settlement agreement and orders parties to comply, then the *Sharp* exception does not apply and, upon dissolution, any tenancy by the entireties becomes a tenancy in common, attachable by creditors of either spouse. If a transfer of former entireties properties from a tenancy to one of the tenants occurs after dissolution in such a situation, then the transfer may be attacked as fraudulent under § 726, because an interest in a tenancy in common is not exempt.

### B. Application to the instant case

■■■ The Court finds that a genuine issue of material fact exists as to whether or not Debtors' interest in the entireties

properties was exempt and thus ineligible for treatment as an "asset" when transferred to Defendant by the Final Judgment of Dissolution or by the March 17, 1998 deeds.

Specifically, the Court finds fault with Defendant's assumption that the *Sharp* principal applies in the instant case. The Court acknowledges that Defendant would be entitled to summary judgment if it appeared obvious from the face of the Final Judgment of Dissolution or from some other evidence before the Court that the Final Judgment constituted an actual transfer of the entireties properties. In that case, there would be no triable question that the entireties properties passed upon dissolution to Defendant as if Debtor predeceased him, leaving Debtor's creditors unprejudiced by the transfer.

However, in the instant case Plaintiff raised more than a mere metaphysical doubt as to the qualification of the Final Judgment of Dissolution as a conveyance in and of itself. On its face the Final Judgment of Dissolution appears to have simply ratified and incorporated the previously executed settlement agreement and ordered Defendant and Debtor to comply with same. Taking all of the affidavits and other evidence before the Court in a light most favorable to Plaintiff, the non-movant, it cannot be said as a matter of law that the entireties properties passed "in the blink of an eye" upon entry of the Final Judgment of Dissolution. It appears just as likely from the materials before the Court that the tenancy by the entireties became a tenancy in common upon dissolution, vulnerable to attack by Debtor's creditors until actual deeds were executed. If such is the case, then Plaintiff may be entitled to recover Debtor's interest in the entireties properties because her interest was transferred, while held as a tenant in common, by the execution of the quitclaim deeds one month after dissolution.

Therefore, the Court finds that there is a genuine issue of material fact as to whether or not the entireties properties are non-exempt "assets" that could have been fraudulently transferred by the Final Judgment of Dissolution or by the deeds executed by Debtor on March 17, 1998. The Court will deny Defendant's Motion for Summary Judgment as to the entireties properties.

### CONCLUSION

The Court finds that Defendant's Motion for Summary Judgment as to the non-entireties properties should be denied because there is a genuine issue of material fact as to the existence of a transferrable interest of Debtor in the non-entireties properties. The Court further finds that Defendant's Motion for Summary Judgment as to the entireties properties should be denied because there is a genuine issue of material fact as to the exempt nature of the entireties properties at the moment of transfer.

The Court will enter a separate Order in accordance with these Findings of Fact and Conclusions of Law.