PARIENTE, J.,
concurring in result.
I agree with the majority’s conclusion that only the monetary amount ultimately received by a hotel — not the total monetary amount paid by customers to an online travel company (OTC) — is subject to the Tourist Development Tax (TDT). I concur in result, however, because I disagree with the statutory construction analysis applied by the majority to reach this conclusion. In my view, the TDT statute is not as clear and unambiguous as either the majority or the dissent claim. See majority op. at 736-37; dissenting op. at 739-40.
There are at least two possible reasonable constructions of the TDT statute: namely, (1) the construction endorsed by the majority that the tax is Intended to be placed on the amount received by the hotels, or (2) the construction endorsed by the dissent that the tax is intended to be placed on the- total amount paid by hotel guests to the OTCs — an amount which would include the markup received by the OTCs. In other words, the legislative intent is not clear.
The fact that both the majority and the dissent conclude that the statute is clear and unambiguous as to their conflicting interpretations is in and of itself an illustration of the statute’s ambiguity. See Bush v. Holmes, 919 So.2d 392, 408 (Fla.2006) (“Ambiguity suggests that reasonable persons can find different meanings in the same language.” (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992))). This lack of clarity of legislative intent is further evident in considering whether the OTCs are the entities that “rent[ ], lease[ ], or let[ ] for consideration” within the meaning of the TDT statute, § 125.0104(3)(a)1., Fla. Stat. (2014), as well as whether, after viewing the TDT statute in pari materia with the Transient Rental Tax statute, the entities subject to the Transient Rental Tax statute are the same entities, as covered in-the TDT statute.
*738 When a statute is ambiguous, courts must attempt to discern legislative intent through statutory construction. See Bautista v. State, 868 So.2d 1180, 1185 (Fla.2008). The principle of statutory construction most applicable here is that where ambiguity exists in' a taxing statute, such as the TDT statute, the statute must be construed in a manner that favors the taxpayers. See Harbor Ventures, Inc. v. Hutches, 366 So.2d 1173, 1174 (Fla.1979). Thus, I agree with the majority that, under the current legislative scheme, the tax should be levied on only the amount ultimately received by the hotels, which is the lower amount because it does not include the markup received by the OTCs.
But I disagree with the majority’s reliance on the Legislature’s inaction with respect to amending the statutes to clarify its intent regarding the markup charges. See majority op. at 735-36. Legislative inaction, at times, may be utilized as a basis for statutory construction when there has been legislative inaction subsequent to a judicial construction of the statute. See, e.g., Goldenberg v. Sawczak, 791 So.2d 1078, 1081 (Fla.2001). Prior to the current opinion in this case, this Court has not had occasion to interpret the relevant statute. Thus, I would not attribute any signifi-canee that rises to the level of statutory construction to the Legislature’s inaction in this context.[1]
If anything,' the record reveals that the Florida Cabinet has been struggling with this issue for some time without a definitive resolution. For example, at a Cabinet meeting in June of 2011, Florida Commissioner of Agriculture Adam Putnam expressed the view that this is “a significant policy matter that one way or the other the Legislature is going to have to speak to.” At that same Cabinet meeting, the Executive Director of the Florida Department of Revenue (DOR) stated, “We think that the statute is unclear. We think the Legislature should clarify it.” The DOR has apparently not taken an official position on the correct interpretation of the statute, except to state that the statute is unclear.
Undoubtedly, the counties would like to receive the tax income resulting from this untapped stream of revenue, and apparently the hotels would prefer for the OTCs to pay a higher tax to help level any competitive disadvantage. After all, the markup amounts received by the OTCs are, in general, a significant percentage of the total amount paid by hotel patrons who book hotel rooms through the OTCs— *739 ranging between twenty-five and forty-five percent, according to the DOR’s 2009 estimates. On the other hand, these markups are the result of business arrangements willingly entered into by the hotels.
The Florida Association of Destination Marketing warns in an amicus curiae brief that if this Court sides with the OTCs— which is effectually the result of today’s decision — the major hotel chains may create them own merchant motels, and the Association further predicts dire consequences in the form of a drastic reduction of tax revenues to the counties. Conversely, other amici curiae, such as the American Society of Travel Agents and the Florida Chamber of Commerce, argue that increased taxes would have a chilling effect on tourism and result in tax revenue losses to the government.
These types of policy concerns are quintessentially within the legislative domain and could and should be addressed by the Legislature. It is not this Court’s place to impose its view of the better policy, especially when it comes to a taxation scheme. See, e.g., Rollins v. Pizzarelli, 761 So.2d 294, 299 (Fla.2000) (“An interpretation of a statutory term cannot be based on this Court’s own view of the best policy.”).
Because the statute is not clear and unambiguous, I would rely primarily on the principle that the lack of clarity in the statutory language should be construed in favor of the taxpayers and against the taxing authority. Thus, I concur with the result reached by the majority and would adopt the reasoning of the First District in Alachua County v. Expedia, Inc., 110 So.3d 941 (Fla. 1st DCA 2013).