A separate order will be entered.

**This order is SIGNED.**

IN RE: Alexander Wayne
ANDERSON, Debtor.

Diane Jensen, Chapter 7 Trustee,
et al., Plaintiffs,

v.

Alexander W. Anderson,
et al., Defendants.

Case No. 9:15-bk-06985-FMD
Adv. Pro. No. 9:15-ap-990-FMD

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Signed October 6, 2016

---

band signs a quitclaim deed, giving the wife sole ownership of the home. Under the Trustee's reasoning, a trustee could argue that the quit-claim deed effected a preferential transfer, since according to title ownership before the husband filed bankruptcy, the wife only owned half the home. This would defeat the family law policy of awarding each spouse an equitable share of marital assets.

34. *Webster v. Hope (In re Hope),* 231 B.R. 403, 417 (Bankr. D.D.C. 1999).

Alberto F. Gomez, Jr., Esq., Tampa, Florida, Counsel for Debtor/Defendant

Jon D. Parrish, Esq., Donald G. Peterson, Esq., Naples, Florida Counsel for Defendants

Donald R. Kirk, Esq., Tampa, Florida, Counsel for Plaintiff, Diane Jensen, Chapter 7 Trustee

John D. Emmanuel, Esq., Tampa, Florida, Counsel for BMO Harris Bank, N.A.

## ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT IN PART

Caryl E. Delano, United States Bankruptcy Judge

THIS PROCEEDING came on for hearing on April 26, 2016, on *Defendants'*

*Motion for Partial Summary Judgment* (Doc. No. 35). The Court having considered the undisputed facts and the argument, the parties' written submissions (Doc. Nos. 35, 51, and 60), and the arguments of counsel, makes the following findings of fact and conclusions of law:

## Findings of Fact

A. This Chapter 7 bankruptcy case was commenced by the filing of an involuntary petition on July 6, 2015 by BMO Harris Bank (the "Bank") as petitioning creditor. Diane Jensen (the "Trustee") is the duly appointed bankruptcy trustee.

B. Debtor, Alexander Wayne Anderson ("Debtor") and his wife Karen Anderson ("Karen") have been married continuously since 1965.

C. On or about March 1, 2004, Debtor and Karen opened Account No. 4808[1] at Morgan Stanley.[2] The account application allowed the applicant to select from the following ownership options: Individual/Sole Proprietorship, Corporation, Partnership, or "Specify Other." After the words "Specify Other," "JTTEN" was handwritten on the account application. The parties agree that "JTTEN" refers to Joint Tenants.

D. On or about May 14, 2004, Debtor and Karen acquired title to the property at 4976 Crayton Court, Naples, Florida (the "Crayton Court Property"). The deed by which Debtor and Karen acquired title conveyed title to "Alex Anderson and Karen Anderson, husband and wife . . ., grantee."[3]

E. On or about June 17, 2004, Debtor and Karen acquired title to the property at 1828 16th Street NW # 4, Washington D.C. (the "D.C. Property"). The deed by which Karen and Debtor acquired title to the D.C. Property states that the property is conveyed to them as "Tenants by the Entirety."[4]

F. In November 2005, Debtor personally guaranteed the mortgage loan obligations of Lavender Hill Holdings, LLC ("Lavender Hill") to the Bank. Lavender Hill owned condominium units, the Bank's collateral, that it leased to a hospital. In connection with his guaranty, Debtor signed a Personal Financial Statement (the "Financial Statement").[5] Contrary to the Bank's assertion, the Financial Statement contains no representation regarding Debtor's ownership of assets in his individual name rather than jointly with Karen.

G. On or about June 13, 2006, Debtor and Karen opened Account No. 1745[6] with Morgan Stanley. The account application permitted the selection of the following forms of ownership: Joint Tenants with Right of Survivorship, with the explanation that "[i]f one owner dies, his/her interest passes to the surviving owner[s];" Tenants by the Entirety, with the explanation that "[i]f one owner dies, his/her interest passes to the surviving owner[s]. Laws vary by state. Please consult your attorney;" Tenants in Common; and Community Property. Debtor and Karen selected Joint Tenants with Right of Survivorship.[7]

---

1. Doc. No. 35-10, marked as Exhibit J; Doc. No. 35-13, marked as Exhibit M.

2. This account, as with others referred to herein, were originally opened at Smith Barney. Smith Barney later merged with Morgan Stanley. References herein to Smith Barney include its successor, Morgan Stanley.

3. Doc. No. 35-3, marked as Exhibit C.

4. Doc. No. 35-4, marked as Exhibit D.

5. Doc. No. 49-1, p. 14.

6. Doc. No. 48-21, Doc. No. 35-15, marked as Exhibit O.

7. Doc. No. 48-21.

H. Also on or about June 13, 2006, Debtor and Karen opened four additional accounts with Morgan Stanley, Account Nos. 1800, 1801, 1802, and 1803. Each account was documented by a Joint Account Agreement with Right of Survivorship (the "Account Agreements").[8] Each of the Account Agreements contained the following statement: "[i]t is the express intention of the undersigned to create an estate or account as joint tenants with right of survivorship and not as tenants in common . . . ."

I. At some point in 2008, Lavender Hill learned that its tenant, the hospital, would not be renewing its lease. Lavender Hill could not obtain other tenants at the same lease rates, and defaulted on its mortgage obligation to the Bank.

J. On or about June 12, 2008, Karen, as Trustee of the Karen G. Anderson Revocable Living Trust 8-8-05 (the "Karen Trust"), and Debtor, as Trustee of the Alex W. Anderson Revocable Living Trust 8-9-05 (the "Alex Trust"), opened Account Numbers 0227 [9] and 0228 [10] with Morgan Stanley. On the applications for both of these accounts, the box marked "Individual/Joint" is checked.

K. As of at least March 1, 2008, Debtor and Karen held Account No. 5074 at Morgan Stanley.[11] No later than June 30, 2008, Debtor and Karen transferred ownership of Account No. 5074 to the Karen Trust and the Alex Trust.[12] Although the Court has not been provided with the signature card for this account, for purposes of Defendants' *Motion for Partial Summary Judgment*, Defendants have assumed that Account No. 5074, titled on the June 30, 2008 account statement in the names of the Karen Trust and the Alex Trust, is owned by the Trusts as tenants in common.[13]

L. As of at least January 1, 2005, Debtor and Karen held an account with Morgan Stanley, Account No. 4462, titled as tenants in common.[14] As of at least January 1, 2009, Debtor and Karen had transferred ownership of Account No. 4462 to the Karen Trust.[15] Sometime thereafter, upon the merger of Smith Barney with Morgan Stanley, Account No. 4462 was renumbered as Account No. 7609.[16]

M. On or about January 9, 2009, Debtor formed the Crayton Trust U/A DTD 1/16/2009 (the "Crayton Trust").

N. On January 28, 2009, Karen, as the Trustee of the Karen Trust, opened Account No. 0232 [17] with Smith Barney. Sometime thereafter, upon the merger of Smith Barney with Morgan Stanley, Account No. 0232 was renumbered as Account No. 4479.[18]

---

**8.** Doc. Nos. 35–5, 35–6, 35–7, and 35–8, marked as Exhibits E, F, G, and H, respectively.

**9.** Doc. No. 35-11, marked as Exhibit K.

**10.** Doc. Nos. 35–12, marked as Exhibit L, and 35-14, marked as Exhibit N.

**11.** Doc. No. 35-9, marked as Exhibit I, p. 1.

**12.** Doc. No. 35-9, marked as Exhibit I, p. 3.

**13.** Defendants refer to this account as Account No. 7412 in their motion for summary judgment (Doc. No. 35) and reply (Doc. No. 60).

**14.** Doc. No. 59-11, p. 1.

**15.** Doc. No. 59-11, p. 2.

**16.** Doc. No. 35, p. 11, n. 4.

**17.** Doc. No. 48-22. The Court notes that the exhibit includes a fax header at the top of the document that reflects a date of May 15, 1996. However, Karen Anderson's signature is dated January 28, 2009.

**18.** Doc. No. 35, p. 11, n. 5.

O. On March 26, 2009, the Bank sued Lavender Hill and Debtor. Debtor was served with the Bank's summons and complaint on March 26, 2009.[19] On February 7, 2011, the Bank obtained a final judgment in the Circuit Court in and for Collier County, Florida, against Debtor for over $4,000,000.00 (the "Judgment").[20]

P. In August 2009, Debtor and Karen sold the D.C. Property. The proceeds of sale were transferred to the Karen Trust.

Q. After entry of the Judgment, the Bank obtained consent of the Circuit Court to commence proceedings supplementary under Fla. Sta. § 56.29. In November 2014, the Bank filed its First Amended Complaint[21] captioned *M & I Marshall & Ilsley Bank, n/k/a BMO Harris Bank, N.A. v. Alexander W. Anderson, individually; Karen Anderson, individually; Karen G. Anderson, as Trustee of the Karen G. Anderson Revocable Living Trust U/A DTD 08/08/2005; Mallord Trust Services Ltd., as Trustee of the Crayton Trust U/A DTD 01/16/2009; Alexander W. Anderson, as Trustee of the Alexander W. Anderson Revocable Trust; and Alexander W. Anderson as Trustee of the Alex W. Anderson CGM IRA Rollover Custodian* (the "State Court Complaint"). In the State Court Complaint, the Bank sought to avoid and recover alleged fraudulent transfers and fraudulent conversions under the proceedings supplementary provisions of Fla. Stat. § 56.29, and Fla. Stat. §§ 726.105, 726.106, 726.108, 222.30, and Chapter 85, Florida Statutes.

R. On March 30, 2015, Debtor and Karen purchased the property at 368 Hawser Lane, Naples, Florida (the "Hawser Property") as husband and wife.[22] Debtor and Karen designated the Hawser Property as their homestead property.[23]

S. On or about May 6, 2015, Debtor and Karen transferred title of the Crayton Court Property to the Karen Trust.

T. Debtor maintains an Individual Retirement Account at Morgan Stanley, Account No. 1198, and has taken distributions from that account.

U. After the Bank filed Debtor's involuntary bankruptcy case, it removed the State Court Complaint to the United States District Court. The District Court referred the case to this Court.[24]

V. Thereafter, the Trustee filed an agreed motion to intervene as party plaintiff,[25] which was granted.[26] The Trustee then filed a motion for leave to file a second amended complaint,[27] also granted.[28]

W. In addition to the state law claims asserted in the State Court Complaint, the Trustee, in her second amended complaint (the "Second Amended Complaint"), seeks a judicial declaration under Federal Rule of Bankruptcy Procedure 7001(9) relief and 11 U.S.C. §§ 544, 548, and 550. The Trustee seeks to avoid and recover a convoluted multitude of transactions involving at least twelve bank accounts, three trusts, and three pieces of real property.[29]

**19.** Doc. No. 7, Exhibit A, p. 3.

**20.** Doc. No. 23-1, pp. 35-36.

**21.** Doc. No. 2.

**22.** Doc. No. 35-19, marked as Exhibit S.

**23.** Doc. No. 35-20, marked as Exhibit T.

**24.** Doc. No. 1.

**25.** Doc. No. 11.

**26.** Doc. No. 14.

**27.** Doc. No. 23.

**28.** Doc. No. 30.

**29.** Doc. No. 23-1, pp. 38-44.

X. The dollar value of the transfers that the Trustee seeks to avoid total over $10,000,000.00.[30] The transfers include transfers from the Morgan Stanley accounts held by Debtor and Karen to the Karen Trust, the transfer of the Crayton Court Property to the Karen Trust, the transfer of the proceeds of sale of the D.C. Property to the Karen Trust, the purchase of the Hawser Property, transfers from Debtor's Individual Retirement Account, transfers by persons other than Debtor, and inter-account transfers within the Alex Trust, the Karen Trust, and the Crayton Trust.

Y. Debtor and Karen have no joint creditors.

### Conclusions of Law

A. Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[31] If the non-moving party would have the burden of proof at trial to establish an essential element of its claim, the movant on summary judgment can prevail either by showing that the non-moving party has no such evidence or by presenting affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial.[32] Once the moving party satisfies its initial burden on summary judgment, the burden then shifts to the non-moving party to establish with record evidence that a genuine dispute of material fact exists.[33] If the non-moving party cannot satisfy its shifted burden, then summary judgment must be rendered against it.[34]

■ B. Under Fla. Stat. § 56.29, judgment creditors may examine the judgment debtor and third parties about the location and disposition of the judgment debtor's property. Section 56.29(6) provides that if the defendant held title to personal property within one year before service of process upon him but, at the time of the examination, the defendant's spouse, relative, or any other person on confidential terms with him claims title or a right of possession to the property, the defendant has the burden of proof to establish that the transfer to the recipient was not made to delay, hinder, or defraud creditors.

C. Relief under § 56.29(6) differs from the fraudulent transfer provisions of Chapter 726 because (i) the look back period under § 56.29(6) is one year before the defendant was served with process in the underlying lawsuit rather than the four-year look back period afforded by § 726.110; and (ii) unlike § 726.105, where the burden is on the creditor to establish that the transfer was made to hinder, delay, or defraud, the burden of proof under § 56.29(6) is on the defendant to establish that the transfer was *not* made to delay, hinder, or defraud.[35]

**30.** *Id.*; Doc. No. 35, p. 2.

**31.** Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56).

**32.** *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994); *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) ("The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial.").

**33.** *Id.* at 1141 ("Once the moving party has met its initial burden by negating an essential element of the non-moving party's case, the burden on summary judgment shifts to the non-moving party to show the existence of a genuine issue of material fact.").

**34.** *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 94 (1st Cir. 1996).

**35.** *In re McCuan*, 2015 WL 7717422, at *2 (Bankr. M.D. Fla. Nov. 30, 2015).

■ D. Under Florida law, property may be jointly owned as tenants in common, joint tenants, or tenants by the entirety.[36]

E. In *Beal Bank, SSB v. Almand and Associates*, the Florida Supreme Court held that property held as a tenancy by the entireties must possess six characteristics:

■ (1) unity of possession (joint ownership and control); (2) unity of interest (the interests in the account must be identical); (3) unity of title (the interests must have originated in the same instrument); (4) unity of time (the interests must have commenced simultaneously); (5) survivorship; and (6) unity of marriage (the parties must be married at the time the property became titled in their joint names).[37]

■ F. Tenancies in common share only the unity of possession.[38]

■ G. Joint tenancies share the unities of ownership, survivorship, interest, time and title.[39]

■ H. The difference between a joint tenancy and a tenancy by the entireties is described in *Beal Bank:*

Although a tenancy by the entireties and joint tenancy with right of survivorship share all of the same characteristics of form, there are significant differences in the legal consequences between the forms of ownership when creditors of one spouse seek to garnish these assets, when one spouse declares bankruptcy, or when one spouse attempts to recover monies transferred without his or her permission. When a married couple holds property as a tenancy by the entireties, each spouse is said to hold it "per tout," meaning that each spouse holds the "whole or the entirety, and not a share, moiety, or divisible part." Thus, property held by husband and wife as tenants by the entireties belongs to neither spouse individually, but each spouse is seized of the whole. In a joint tenancy with right of survivorship, each person has only his or her own separate share ("per my"), which share is presumed to be equal for purposes of alienation; whereas, for purposes of survivorship, each joint tenant owns the whole ("per tout"), so that upon death the remainder of the estate passes to the survivor. Because of this distinction between each spouse owning the whole versus each owning a share, if property is held as a joint tenancy with right of survivorship, a creditor of one of the joint tenants may attach the joint tenant's portion of the property to recover that joint tenant's individual debt. However, when property is held as a tenancy by the entireties, only the creditors of both the husband and wife, jointly, may attach the tenancy by the entireties property; the property is not divisible on behalf of one spouse alone, and therefore it cannot be reached to satisfy the obligation of only one spouse.[40]

■ I. When real property is owned by husband and wife, the ownership in both their names vests title in them as tenants by the entirety ("TBE").[41]

■ J. Regarding bank accounts, the Florida Supreme Court held in *Beal Bank* that:

---

**36.** *Beal Bank, SSB v. Almand and Associates,* 780 So.2d 45, 52–53 (Fla. 2001).

**37.** *Id.* at 52.

**38.** *Id.*

**39.** *Beal Bank,* 780 So.2d at 52.

**40.** *Id.* at 53 (internal citations omitted).

**41.** *Id.*

... as between the debtor and a third-party creditor (other than the financial institution into which the deposits have been made), *if the signature card of the account does not expressly disclaim the tenancy by the entireties form of ownership*, a presumption arises that a bank account titled in the names of both spouses is held as a tenancy by the entireties as long as the account is established by husband and wife in accordance with the unities of possession, interest, title, and time and with right of survivorship. The presumption we adopt is a presumption affecting the burden of proof pursuant to section 90.304, Florida Statutes (2000), thus shifting the burden to the creditor to prove by a preponderance of evidence that a tenancy by the entireties was not created. We therefore answer the first rephrased certified question in the affirmative and recede from [First Nat. Bank of Leesburg v.] Hector Supply Co. [254 So.2d 777 (Fla. 1971)], Winters[ v. Parks, 91 So.2d 649 (Fla. 1956)], Bailey[ v. Smith, 89 Fla. 303, 103 So. 833 (1925)], and In re Estate of Lyons [90 So.2d 39 (Fla. 1955)] to the extent that these opinions are inconsistent with this opinion.

. . .

*Thus, if a signature card does not expressly disclaim a tenancy by the entireties form of ownership, a rebuttable presumption arises that a tenancy by the entireties exists provided that all the other unities necessary for a tenancy by*

*the entireties are established.* However, if a signature card expressly states that the account is not held as a tenancy by the entireties and another form of legal ownership is expressly designated, no presumption of a tenancy by the entireties arises.[42]

■ K. Unless stated otherwise, joint tenants and tenants in common are presumed to own their jointly held property in equal undivided interests.[43]

■ L. Under both the fraudulent transfer provisions of the Bankruptcy Code and the Florida Uniform Fraudulent Transfer Act ("FUFTA"), a transfer of property that is exempt from creditors may not be the subject of an action to avoid a fraudulent transfer.[44] The disposition of exempt property cannot be the result of an intent to defraud creditors because the creditors had no claim to the property regardless of whether or not it was transferred.[45] FUFTA excludes property held as a tenancy by the entireties from treatment as a recoverable asset to the extent that the TBE property is subject to process by a creditor holding a claim against only one spouse.[46] Therefore, as between spouses still married, "where the original transfer into entireties status is not fraudulent, a subsequent transfer of exempt entireties property [to one spouse] is not avoidable."[47]

■ M. Under FUFTA, a "transfer made or obligation incurred by a debtor is

42. *Beal Bank,* 780 So.2d at 58–59 (emphasis supplied) (internal citations and footnotes omitted).

43. *Julia v. Russo,* 984 So.2d 1283, 1285 (Fla. 4th DCA 2008) ("In absence of evidence to the contrary, co-tenants are presumed to owe [sic] equal undivided interests") (quoting *Levy v. Docktor,* 185 B.R. 378, 381 (S.D. Fla. 1995)).

44. *See Sneed v. Davis,* 135 Fla. 271, 184 So. 865 (1938); *see also In re Goldberg,* 229 B.R. 877, 882–83 (Bankr. S.D. Fla. 1998).

45. *In re Short,* 188 B.R. 857, 860 (Bankr. M.D. Fla. 1995).

46. *See* Fla. Stat. § 726.102(2)(c).

47. *Dzikowski v. Delson (In re Delson),* 247 B.R. 873, 876 (Bankr. S.D. Fla. 2000).

fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (a) [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor...."[48] A transfer occurs only if assets have been disposed of or parted with.[49]

■ N. The account application for Morgan Stanley Account No. 4808[50] specifies that the account is owned by Debtor and Karen as joint tenants. There was no express disclaimer of ownership as tenants by the entireties. Therefore, the *Beal Bank* presumption, that the account is owned as tenancy by the entireties, applies and has not been rebutted. Because Debtor and Karen have no joint creditors, Account No. 4808 was not subject to the claims of Debtor's creditors. Transfers from this account are not subject to avoidance as fraudulent transfers.

■ O. The account application for Morgan Stanley Account No. 1745[51] provided for the selection of ownership as tenants by the entirety. But Debtor and Karen did not elect to own the Account No. 1745 as tenants by the entirety and instead selected ownership as joint tenants with the right of survivorship. Because Debtor and Karen expressly disclaimed the tenancy by the entireties form of ownership, and instead selected to own the account as joint tenants, no presumption of a tenancy by the entireties arises.[52] As

joint tenants, Debtor and Karen are presumed to own the assets in Account No. 1745 in equal shares.[53] Defendants argue that if the alleged transfer was for less than one-half the value of these accounts, the transfer is not subject to avoidance as a fraudulent transfer. But this argument overlooks the fact that the transfers from the account were of funds equally owned by each Trust, and that to the extent the account remained titled in the names of both Trusts, the funds remaining in the account were likewise owned equally by each Trust. To the extent that a transfer consisted of funds owned equally with the Karen Trust, the portion of the amount transferred that was owned by the Karen Trust is not subject to avoidance as a fraudulent transfer.

■ P. The account applications for Morgan Stanley Account Nos. 1800, 1801, 1802, and 1803[54] did not expressly disclaim a tenancy by the entireties. This is so, despite the fact that Account No. 1745, which did include such a disclaimer, was opened on the same date. In *Beal Bank*, the Florida Supreme Court held:

> In a document separate from the signature card, Barnett Bank attempted through its rules and regulations contained in its Welcome Brochure to preclude its depositors from establishing a tenancy by the entireties. That agreement would be binding as between the depositor and Barnett Bank. However, because the signature card did not contain an express disclaimer that the ac-

---

48. *Wiand v. Wells Fargo Bank, N.A.*, 86 F.Supp.3d 1316, 1325 (M.D. Fla. 2015) (quoting § 726.105(1)(a), Florida Statutes).

49. *See* Fla. Stat. § 726.102(14).

50. Doc. No. 35-10, marked as Exhibit J.

51. Doc. No. 48-21.

52. *Beal Bank*, 780 So.2d at 59.

53. *Id.* at 53; *see also Nationsbank, N.A. v. Coastal Utilities, Inc.*, 814 So.2d 1227, 1229 (Fla. 4th DCA 2002) ("Absent other provision, however, the shares in the joint account are presumed to be equal for purposes of alienation.").

54. Doc. Nos. 35-5, 35-6, 35-7, 35-8, marked as Exhibits E, F, G, and H, respectively.

count was not held as a tenancy by the entireties, the reference in the Welcome Brochure alone would not be sufficient to eliminate the presumption in favor of tenancy by the entireties as between the depositor and a third party creditor.[55] The Florida Supreme Court's analysis of the legal effect of language of Barnett Bank's Welcome Brochure applies equally to the language of a separately documented account, in this case Account No. 1745. Therefore, as to Account Nos. 1800, 1801, 1802, and 1803, the *Beal Bank* presumption applies and has not been rebutted. Because Debtor and Karen have no joint creditors, these accounts were not subject to the claims of Debtor's creditors. Accordingly, transfers from Account Nos. 1800, 1801, 1802, and 1803 are not subject to avoidance as fraudulent transfers.

■ Q. The accounts owned by the Karen Trust and the Alex Trust, Morgan Stanley Account Nos. 0227[56] and 0228,[57] are held as joint tenants. Because the Trusts are not married individuals, the accounts are not owned as tenants by the entirety. To the extent that the Karen Trust and Alex Trust accounts were funded from accounts held as TBE, the TBE exemption was lost upon the transfer to the Trust accounts.[58] However, for purposes of alienation, the Trusts are presumed to own the assets in the accounts in equal shares.[59] As set forth above, to the extent that a transfer consisted of funds owned equally by the Karen Trust, the portion of the amount transferred that was owned by the Karen Trust is not subject to avoidance as a fraudulent transfer.

R. Account No. 5074,[60] owned by the Karen Trust and the Alex Trust and for which the Court has not been provided a signature card, is presumed to be held as tenants in common.[61] As such, the Trusts are presumed to own the assets in Account No. 5074 in equal shares. As set forth above, to the extent that a transfer consisted of funds owned equally by the Karen Trust and the Alex Trust, the portion of the amount transferred that was owned by the Karen Trust is not subject to avoidance as a fraudulent transfer.

■ S. Intra-Trust transfers between the Karen Trust accounts at Morgan Stanley (transfers between accounts owned by the Trust to other accounts owned by the Trust) cannot be avoided as transfers because dominion and control of the accounts were never relinquished. Because the assets have not been disposed of or parted with, the intra-Trust transfers do not themselves constitute fraudulent transfers as contemplated by § 726.102(14).[62] This does not mean that the Trustee cannot trace funds that were originally the subject of an avoidable transfer to an account owned by the Karen Trust to a different account owned by the Karen Trust.

55. *Beal Bank*, 780 So.2d at 61.

56. Doc. No. 35-11, marked as Exhibit K.

57. Doc. No. 35-12, marked as Exhibit L, and 35-14, marked as Exhibit N.

58. *In re Quaid*, 2011 WL 5572605, at *2 (M.D. Fla. Nov. 16, 2011); *see Passalino v. Protective Group Securities, Inc.*, 886 So.2d 295, 297–98 (Fla. 4th DCA 2004); *see also Rollins v. Alvarez*, 792 So.2d 695, 696, n.2 (Fla. 5th DCA 2001).

59. *Beal Bank*, 780 So.2d at 53.

60. Doc. No. 35-9, p. 3, marked as Exhibit I.

61. For purposes of summary judgment, Defendants concede that the accounts owned by the Alex Trust and the Karen Trust are not held as tenants by the entireties, but rather, as tenants in common.

62. *Wiand v. Wells Fargo Bank, N.A.*, 86 F.Supp.3d at 1325.

T. For the same reason, intra-Trust transfers between the accounts at Morgan Stanley held by the Alex Trust cannot be avoided as transfers. This does not mean that the Trustee cannot trace funds that were originally the subject of an avoidable transfer to an account owned by the Alex Trust to a different account owned by the Alex Trust.

■ U. The Crayton Court Property was owned by Debtor and Karen, as husband and wife, and is presumed to be owned as tenants by the entireties. The presumption has not been rebutted. The Crayton Court Property remained TBE property, even though it lost its status as exempt homestead property when Debtor and Karen moved to the Hawser Property. Because Debtor and Karen have no joint creditors, the Crayton Court Property was not subject to the claims of Debtor's creditors. FUFTA excludes from treatment as a recoverable "asset" property held as a tenancy by the entireties to the extent that such property is subject to process by a creditor holding a claim against only one spouse.[63] Therefore, as between spouses still married, "where the original transfer into entireties status is not fraudulent, a subsequent transfer of exempt entireties property [to one spouse] is not avoidable." [64] The transfer of the Crayton Court Property to the Karen Trust is not subject to avoidance as a fraudulent transfer.

V. Intra-Trust transfers between accounts held by the Crayton Trust and other Crayton Trust accounts are not avoidable as fraudulent transfers. This does not mean that the Trustee cannot trace funds that were originally the subject of an avoidable transfer to their ultimate intra-Trust transfer account.

■ W. The D.C. Property was acquired by Debtor and Karen as tenants by the entirety. The District of Columbia recognizes the tenancy by the entireties form of ownership, which still maintains most of the common law features.[65] "[A]n interest in property ... may be granted ... to ... grantees in tenancy in common, joint tenancy, or tenancy by the entirety." [66] Similar to Florida law, in the District of Columbia, property held in tenancy by the entireties is only liable for the joint debts of both spouses.[67] Therefore, where property is held by the entireties, "it is unreachable by creditors of one but not of both of the tenants." [68] Because Debtor and Karen have no joint creditors, the D.C. Property was not subject to the claims of Debtor's creditors. The transfer of the D.C. Property to the Karen Trust is not subject to avoidance as a fraudulent transfer.

X. In his Financial Statement, Debtor made no representations to the Bank regarding the form of ownership of assets that would act as an estoppel to his assertions of ownership with Karen. Even if that were the case, if Debtor made assertions in his Financial Statement that acted to estop him from now taking a contrary position, Karen would not be so estopped.

Y. Assets owned solely by the Alex Trust or the Crayton Trust are not exempt from the claims of Debtor's creditors. Al-

**63.** *See* Fla. Stat. § 726.102(2)(c).

**64.** *Dzikowski v. Delson (In re Delson),* 247 B.R. at 876.

**65.** *Malek v. Flagstar Bank,* 70 F.Supp.3d 23, 29 (D.D.C. 2014).

**66.** D.C. Code § 42–516(b)(2).

**67.** *In re Wall's Estate,* 440 F.2d 215, 218 (D.C. Cir. 1971).

**68.** *Morrison v. Potter,* 764 A.2d 234, 236 (D.C. 2000) (quoting *In re Wall's Estate,* 440 F.2d at 220).

leged transfers of those assets may be avoided as a fraudulent transfer.

Z. In *Havoco of America, Ltd. v. Hill*,[69] the Florida Supreme Court held, first, that:

> The transfer of nonexempt assets into an exempt homestead with the intent to hinder, delay, or defraud creditors is not one of the three exceptions to the homestead exemption provided in article X, section 4. Nor can we reasonably extend our equitable lien jurisprudence to except such conduct from the exemption's protection. We have invoked equitable principles to reach beyond the literal language of the exceptions only where funds obtained through fraud or egregious conduct were used to invest in, purchase, or improve the homestead.

And, second, the *Havoco v. Hill* court held that with respect to the applicability of Fla. Stat. §§ 726.205, 222.29, and 222.30 to Florida's constitutional homestead exemption:

> .... a homestead acquired by a debtor with the specific intent to hinder, delay, or defraud creditors is not excepted from the protection of article X, section 4.[70]

■ AA. The Trustee cannot rely on 11 U.S.C. § 522(*o*) and (p) in an action to recover a fraudulent transfer because these provisions of the Bankruptcy Code do not supersede *Havoco v. Hill*.[71] As the court stated in *In re Champalanne*, § 522(*o*) and (p) do not

> provide a trustee with grounds to object to a debtor's homestead exemption claim and, if successful, decrease the amount

that a debtor may claim as exempt. In order to make use of subsections (*o*) and (p), the proper remedy is to file an objection to exemption, not to file an adversary proceeding seeking to avoid a fraudulent conveyance.[72]

And to the extent that § 522(*o*) is applicable, it does not affect the ability of Debtor to exempt the home as a tenancy by the entireties property.[73]

BB. The Hawser Property was acquired by Debtor and Karen as husband and wife and is presumed to be owned as tenants by the entireties. The presumption has not been rebutted. Because Debtor and Karen have no joint creditors, the Hawser Property is not subject to the claims of Debtor's creditors.

■ CC. The Hawser Property is Debtor and Karen's exempt homestead property. As such, it is immune from the claims of creditors, including the claims of the Trustee.

DD. Unless an objection to Debtor's claim of exemption under Fla. Stat. § 222.21(2) for his IRA account, Morgan Stanley Account No. 1198, is sustained, transfers from that account are not subject to avoidance as fraudulent transfers.

EE. Although Debtor and Karen state in their affidavits that it was their intent for all accounts be held as TBE,[74] the Court did not rely upon the affidavits in finding that the *Beal Bank* presumption applies. Rather, in making its determination regarding the application of the *Beal Bank* presumption, the Court relied upon the account opening documents and related bank statements.

69. 790 So.2d 1018, 1028 (Fla. 2001).

70. *Id.* at 1030.

71. *In re Champalanne*, 425 B.R. 707, 712 (Bankr. S.D. Fla. 2010).

72. *Id.*

73. *In re Davis*, 403 B.R. 914 (Bankr. M.D. Fla. 2009).

74. Doc. Nos. 35–1 and 35–2.

FF. Transfers by parties other than Debtor are not subject to avoidance except to the extent that the subject asset was transferred to that party as an initial transferee, or an immediate or mediate transferee.

GG. To the extent the Trustee seeks to avoid a transfer that occurred before March 26, 2008, which is one year prior to the March 26, 2009 date of service of the Bank's original complaint against Debtor, the transfer falls outside the look back period under Fla. Stat. § 56.29(6)(a) and is not subject to avoidance.

Accordingly, for the foregoing reasons, it is

**ORDERED:**

1. Defendants' *Motion for Partial Summary Judgment* is **GRANTED IN PART** as set forth herein and otherwise **DENIED.**

2. This ruling is without prejudice to the Trustee's claims for the avoidance of transfers, if any, by Debtor of his non-exempt assets to an initial transferee, or an immediate or mediate transferee, or to obtain a monetary judgment to the extent that the avoidance of a transfer would impair Debtor and Karen's homestead exemption.

3. The Court shall schedule a status conference to allow counsel to address the remaining issues in the case and schedule a trial.

4. To the extent the Court has not ruled upon an issue raised in the *Motion for Partial Summary Judgment*, the Motion is deemed **DENIED** as to that issue.